UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KATY STAPLETON,

                Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION; JUAN VILLAR, former Principal of High School for Media and Communications, in his official and individual capacity; BIENVENIDA GALVEZ, Assistant Principal of High School for Media and Communications, in her official and individual capacity; SOFIA RUSSO, Principal of High School for Media and Communications, in her official and individual capacity; ELIZABETH PAYERO, Student Counselor of High School for Media and Communications, in her official and individual capacity; RANDALL CHENEVERT, Building Manager of High School for Media and Communications, in his official and individual capacity; MARILYN RAMIREZ, Special Education Teacher of High School for Media and Communications, in her official and individual capacity,

                Defendants.

---

**COMPLAINT**

**22-Civ.-___**

**JURY TRIAL DEMANDED**

Plaintiff *pro se* KATY STAPLETON, as and for her Complaint, against Defendants, alleges as follows:

**PRELIMINARY STATEMENT**

1.    Plaintiff brings this action seeking monetary and equitable relief based upon Defendants' violations of 42 U.S.C. § 1983, based on retaliation for First Amendment protected speech for her union activities as a United Federation of Teachers (hereinafter "UFT") Chapter

1

Leader while employed as a teacher for the New York City Department of Education (hereinafter "NYCDOE") at the High School for Media & Communications in Manhattan (hereinafter "the School").

2. The conduct complained of in this action involves Defendants' coercion, retaliation, and interference with Plaintiff's exercise of her First Amendment rights as the UFT chapter leader at the School, while advocating on behalf of teachers and students at the School. The retaliatory conduct following her protected activity includes, but is not limited to, the issuance of adverse performance ratings and evaluations, loss of overtime and other per session opportunities, as well as disciplinary letters to file which ultimately led to Section 3020-a disciplinary charges seeking termination of Plaintiff's employment, based on charges for which she was eventually exonerated.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1331, as this matter involves federal questions.

4. This Court has the power to issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).

5. This action's venue properly lies in the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1391, because a substantial part of the acts or omissions giving rise to this action occurred in this District in Bronx County, New York, and Defendants are subject to personal jurisdiction in this District.

**PARTIES**

6. Plaintiff KATY STAPLETON is a resident of Bronx County and the State of New York. Plaintiff is a tenured Spanish teacher employed by Defendant NYCDOE.

7. At all times relevant herein, Defendant NEW YORK CITY DEPARTMENT OF EDUCATION ("NYCDOE") is a city school district established pursuant to Title II, Article-52-A of the New York State Education Law, NY Educ. Law Section 2590 *et seq.*

8. At all times relevant herein, Defendant JUAN VILLAR ("Principal Villar") was the Principal of the High School for Media & Communications, a high school in Manhattan, within the NYCDOE, and is sued in his official and individual capacity.

9. At all times relevant herein, Defendant BIENVENIDA GALVEZ ("AP Galvez") is the Assistant Principal of the High School for Media & Communications, and is sued in her official and individual capacity.

10. At all times relevant herein, Defendant SOFIA RUSSO is the current Principal of the High School for Media & Communications, and is sued in her official and individual capacity.

11. At all times relevant herein, Defendant ELIZABETH PAYERO is a Student Counselor of the High School for Media & Communications, and is sued in her official and individual capacity.

12. At all times relevant herein, Defendant RANDALL CHENEVERT was the Building Manager of the High School for Media & Communications, and is sued in his official and individual capacity.

13. At all times relevant herein, Defendant MARILYN RAMIREZ is a special education teacher within the High School for Media & Communications, and is sued in her official and individual capacity.

**STATEMENT OF FACTS**

14. Plaintiff has been a teacher within Defendant NYCDOE since February 2001 and continues to serve in her role with Defendant NYCDOE as a teacher.

15. Since on or about February 2001, Plaintiff taught at the High School for Media and Communications.

16. Before Principal Villar assumed the position of principal at the High School for Media and Communications in June 2015, Plaintiff had never been issued a disciplinary letter to her file. She also regularly participated in per session after school programs. In addition to her role as a professional educator within the NYCDOE, Plaintiff regularly taught summer school and held a per session position with Pathway to Graduation for 8 hours per week before receiving Section 3020-a disciplinary charges as a tenured teacher.

17. Plaintiff took over as UFT chapter leader of the school in February 2014 for the school's departed UFT chapter leader, and on or about June 5, 2015, Plaintiff was elected as the UFT chapter leader at the School, with her term to begin in July 2015.

18. Prior to her election as UFT Chapter leader, Plaintiff had no prior disciplinary issues with the school's administration.

19. Beginning in February 2014, Plaintiff was very outspoken in her duties as UFT Chapter leader, reporting among other things to her UFT district representative, administration failing to post per session positions, misallocation of budget funds, and special education violations of the New York State Education Department's regulations regarding the administration's failure to hold a zero period for ESL and special education students. Plaintiff's complaints triggered an investigation against the school administration, which caused a fine to be imposed against the school.

20. In June 2016, Juan Villar became the principal of the High School for Media and Communications.

21. Upon Principal Villar's appointment, Plaintiff was warned by UFT District Representative Winnie Thompson to be careful because, upon information and belief, Principal Villar had caused the UFT chapter leader at his former school to be terminated.

22. Furthermore, shortly upon his arrival to the school, Principal Villar indicated to several people, including the school's parent coordinator, that he did not want Plaintiff in his school and he was going to get her fired. Later in October 2019, Principal Villar told the parent coordinator that "the only reason he had not done so was because her mother was sick, and she was a good daughter."

23. On June 14, 2016, Plaintiff emailed her UFT District representative Winnie Thompson regarding Principal Villar's selection process for a Dominican Republic study abroad program for teachers at the School. Plaintiff expressed her concerns that only some teachers were considered for the program, and other qualified candidates were not made aware of, nor considered, for the study abroad program.

24. On or about October 17, 2017, Plaintiff shared union-specific information with older teachers at the school who were rated as ineffective for the 2016-2017 school year on how to appeal their rating, which frustrated Principal Villar's agenda to remove these teachers from the school.

25. On or about June 22, 2018, Plaintiff advised UFT District Representative Thompson that she wanted to file a complaint against Principal Villar based on several incidents. Ms. Thompson assured Plaintiff that she would discuss her complaint with the Superintendent over the summer.

26. On or about November 7, 2018, Plaintiff notified UFT District Representative Thompson and Principal Villar, of a student who was believed to have contracted bedbugs at the School, requiring the intervention of the NYCDOE Health and Safety division.

27. On September 25, 2019, Plaintiff sent an email to Principal Villar and Assistant Principal Galvez requesting coverage for her last-period class so that she, as her late mother's executor, might appear at a court date scheduled for that same day.

28. After Plaintiff received no email response, she then told AP Galvez in person, in her office that morning at approximately 9 am, that she needed her last class (8th period – started at 1:37 pm) to be covered so that she could appear in court as scheduled at 2 pm. AP Galvez assured Plaintiff that administration would have her class covered.

29. At approximately 1:30 pm on September 25, 2019, Plaintiff sent a student from her class to inform AP Galvez that she had to leave and needed coverage to be sent to cover her class. AP Galvez sent the student back to inform Plaintiff that she did not have anyone to cover the class.

30. Unfortunately, by this time, it was too late for Plaintiff to find someone to cover the class, so she asked the students to wait outside the classroom for AP Galvez. Plaintiff intentionally requested the students to wait in the hallway and locked the classroom door so that the students in her class would be monitored by those monitoring the school security cameras. The classrooms themselves did not contain security cameras. Moreover, it was school policy that students were not to be left unattended in the classrooms.

31. Principal Villar and AP Galvez intentionally neglected their duties to arrange for, or personally provide coverage to Plaintiff in an effort to retaliate against her for her role as UFT chapter leader of the school and the numerous complaints she made on behalf of herself, co-workers, and even students at the school.

32. On September 26, 2019, Plaintiff emailed Principal Villar and AP Galvez to discuss the events that took place the previous day. Once again, this email from Plaintiff to her administration went unanswered.

33. Upon information and belief, Principal Villar, with the support of AP Galvez, reported the September 25, 2019, incident against Plaintiff to the NYC Office of Special Investigation (OSI) as class abandonment, and the OSI investigator substantiated this claim even though Plaintiff requested coverage and gave reasonable notice to Principal Villar and AP Galvez.

34. In October 2019, Plaintiff filed a safety complaint through her UFT District representative Ms. Thompson regarding a safety issue regarding a school science lab. One of the science labs had a leak in a pipe that was unable to be properly closed. Plaintiff filed a safety complaint with Ms. Thompson directly which then was sent to Principal Villar, as a safety complaint of this nature is to be addressed directly with the principal of the school upon receipt.

35. On October 2, 2019, Plaintiff emailed Principal Villar regarding the lack of parking which was available to the staff of the High School of Media and Communications. Ongoing construction forced many teachers to find scarce street parking. In several emails which were exchanged between Plaintiff and Principal Villar from October 2 through October 8, 2019, Plaintiff expressed her concerns, including but not limited to, unavailable parking for staff and subsequent tardiness which could result from the lack of parking. Principal Villar complained that Plaintiff was making him look bad about raising the parking issue.

36. In November 2019, Plaintiff was suspended and reassigned from the school to a "rubber room" pending Section 3020-a charges against her based on allegations related to the September 25, 2019 incident. This prevented her from doing per session work and she was removed as the UFT chapter leader of the School.

37. In contrast, just one day after the September 25, 2019, incident which ultimately led to disciplinary charges brought against Plaintiff, another teacher within the school had an emergency and needed to leave the building before she had the chance to inform the administration. This teacher, however, faced no disciplinary action for this incident.

38. On January 8, 2020, Plaintiff met with Principal Villar and her union Special Representative, Ms. Thompson, to discuss the findings of the OSI investigation regarding the September 25, 2019 incident. Plaintiff subsequently received a disciplinary letter dated January 15, 2020, related to the incident.

39. On February 27, 2020, Plaintiff was then reassigned again to Community Math and Science Prep, and her duties were restricted to administrative tasks.

40. Following Plaintiff's reassignment, Special Education teacher Marilyn Ramirez told students whom Plaintiff had been teaching before her reassignment that Plaintiff was fired for not being a good teacher, a defamatory comment which resulted in further harm to Plaintiff's professional career and reputation among the students and staff members of the school. Several students texted Plaintiff about Ms. Ramirez's defamatory comments. Plaintiff emailed her school administration about Ms. Ramirez's defamatory comments, and they failed to do anything about it.

41. In or about March 2020, during the COVID-19 pandemic, Plaintiff applied to work in a supervision center to take care of the children of first responders from 12 pm to 7 pm. However, after only three weeks, Plaintiff was once again removed from the program in the middle of the day as a result of her suspension pending the Section 3020-a charges.

42. Student Counselor Payero and Building Manager Chenevert falsely testified or manipulated evidence against Plaintiff at her Section 3020-a disciplinary hearing.

43. At the conclusion of Plaintiff's 3020-a hearing, Hearing Officer Steven C. Kasarda dismissed all the disciplinary charges against Plaintiff, concluding that "the principal was aware but made no effort to cover the class in full knowledge of [*sic*] the emergency."

44. On or about June 15, 2022, following the Section 3020-a hearing, Plaintiff was reinstated and returned by the NYCDOE to the High School for Media and Communications. The very same day she returned, Plaintiff was summoned to a disciplinary conference by the new Principal Sofia Russo, who had formerly served as an Assistant Principal at the school under Principal Juan Villar.

45. Plaintiff was unable to secure union representation in time for the meeting and as a result, the disciplinary meeting has yet to take place. Plaintiff had no further information regarding the disciplinary notice she was given which may lead to further disciplinary action.

46. Plaintiff has suffered damage to her professional career and reputation as a result of the Section 3020-a disciplinary charges which were brought against her in retaliatory fashion, resulting in her being removed from her position as a teacher at the High School for Media and Communications and as UFT chapter leader of the school. She also was demoted to administrative duties, received less pay, loss of her ability to head the anime club and run dance class, was ineligible for overtime and per session work she regularly performed, and was given negative performance reviews and work evaluations.

47. Notably, Plaintiff has suffered financial harm as a result of her ineligibility to participate in summer school for three consecutive school years; after school per session work; and the Pathway to Graduation program, a NYCDOE program which helps students earn their High School Equivalency Diploma.

## FIRST CLAIM FOR RELIEF
### Violation of 42 U.S.C. Section 1983—First Amendment Retaliation
**(against all Defendants)**

48. Plaintiff repeats and realleges all the preceding paragraphs of this complaint, as if fully set forth herein.

49. Defendants, through the aforementioned conduct, have violated 42 U.S.C. Section 1983, by retaliating against Plaintiff for advocating for other members and students, as a Union Chapter Leader in violation of the First Amendment.

50. Prior to obtaining her position as UFT Chapter leader at the school, Plaintiff had never received any disciplinary letters to file from her school administration.

51. Plaintiff was speaking as a citizen on a matter of public concern on multiple occasions including, but not limited to, when she inquired as to the hiring criteria used by Principal Villar for the Dominican Republic study abroad program, raised concerns about parking around the school, informed Principal Villar about the possible bedbug infestation at the school, and made safety complaints to UFT District Representative Winnie Thompson regarding a leaking gas pipe within the science lab of the school.

52. Throughout the 2018-19 school year, Plaintiff filed several formal and informal grievances, observation appeals, and safety complaints on behalf of herself and other teachers to the administration of the school, and was subsequently retaliated against by her administration within close temporal proximity to said complaints and grievances.

53. Defendants took adverse employment actions against her in numerous ways, including but not limited to, disciplinary letters to file, suspension from her teaching position in November 2019, loss of per session work opportunities, loss of summer schoolwork opportunities, loss of opportunity to work with the Pathway to Graduation program, and loss of

her ability to head the anime club and run dance class, all of which she regularly engaged before she was rendered ineligible after having Section 3020-a disciplinary charges proffered against her.

## SECOND CLAIM FOR RELIEF
### Violation of the Federal Rehabilitation Act for advocating special needs students
**(against Defendant NYCDOE)**

54. Plaintiff repeats and realleges all the preceding paragraphs of this complaint, as if fully set forth herein.

55. Section 504 of the Rehabilitation Act requires school districts to provide regular or special education and related aids and services so that the educational needs of disabled students are met as adequately as non-disabled students.

56. Defendants, through the aforementioned conduct, have violated the federal Rehabilitation Act by retaliating against Plaintiff for advocating for special education students regarding their special needs as a Union Chapter Leader.

57. Defendants took adverse employment actions against her in numerous ways, including but not limited to, disciplinary letters to file, suspension from her teaching position in November 2019, loss of summer and per session work opportunities, including, tutoring, Saturday school, the Pathway to Graduation program, and the anime club and dance club as after school classes, all of which she regularly engaged in and was paid for before she was rendered ineligible after having Section 3020-a disciplinary charges proffered against her.

### THIRD CLAIM FOR RELIEF
#### Claims for defamation
(against Defendant Marilyn Ramirez)

58. Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

59. Defendant Marilyn Ramirez has defamed Plaintiff with false and defamatory allegations as set forth above, including, but not limited to, telling students whom Plaintiff had formerly been teaching prior to her premeditated and retaliatory assignment out of the school, that Plaintiff was fired because she was a bad teacher and would not be returning to the school.

### JURY DEMAND

Plaintiff demands a trial by jury on all of the triable issues of this complaint

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for declaratory relief and damages as follows

A. A declaratory judgment that Defendants violated 42 USC Section 1983 for First Amendment retaliation;

B. A declaratory judgment that Defendants violated the federal Rehabilitation Act;

C. A declaratory judgment that Defendants are liable for defamation against Plaintiff;

D. Awarding Plaintiff compensatory damages (including but not limited to emotional distress damages and damages accruing as a result of numerous lost employment opportunities) and punitive damages (to the extent available) pursuant to 42 USC Section 1983;

E. Awarding Plaintiff costs; and

     F. Such other and further relief as this Court may deem just and proper

Dated:  Bronx, New York
     October 28, 2022

                    By: s/Katy Stapleton
                        KATY STAPLETON
                        Plaintiff pro se
                        1428 Bryant Avenue
                        Bronx, NY 10459
                        (646) 363-8494
                        srastapleton@gmail.com