USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 09/06/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Katy Stapleton,

                                    Plaintiff,

            -against-

New York City Department of Education et al.,

                                    Defendants.

1:22-cv-09351 (PAE) (SDA)

REPORT AND RECOMMENDATION

STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.

TO THE HONORABLE PAUL A. ENGELMAYER, UNITED STATES DISTRICT JUDGE:

Plaintiff Katy Stapleton ("Plaintiff" or "Stapleton") brings this action against defendants New York City Department of Education ("NYCDOE"), Juan Villar ("Villar"), Bienvenida Galvez ("Galvez"), Sofia Russo ("Russo"), Elizabeth Payero ("Payero"), Randall Chenevert ("Chenevert") and Marilyn Ramirez ("Ramirez") (collectively, the "Defendants") alleging First Amendment retaliation in violation of 42 U.S.C. § 1983 against all the Defendants, retaliation in violation of the Rehabilitation Act against the NYCDOE and defamation against Ramirez. (Compl., ECF No. 1, ¶¶ 48-59.) Pending before the Court is Defendants' motion to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Defs.' Mot. to Dismiss, ECF No. 28.)

For the reasons set forth below, I respectfully recommend that Defendants' motion be GRANTED IN PART and DENIED IN PART and that Plaintiff be granted leave to amend her First Amendment and Rehabilitation Act retaliation claims.

**FACTUAL ALLEGATIONS**[1]

Since February 2001, Stapleton has been employed by the NYCDOE as a Spanish teacher and taught at the High School for Media and Communications ("HSMC"). (Compl. ¶¶ 6, 14-15.) In February 2014, Stapleton took over as Chapter Leader for the United Federation of Teachers ("UFT") at HSMC and in June 2015 was elected to that position for a term beginning in July 2015. (*Id*. ¶ 17.) Stapleton was very outspoken in her duties as UFT Chapter Leader, reporting among other things to her UFT district representative about the administration failing to post per session positions, misallocation of budget funds and "special education violations of the New York State Education Department's regulations regarding the administration's failure to hold a zero period for [English as a Second Language] and special education students." (*Id*. ¶ 19.) Stapleton's complaints triggered an investigation against the school administration, which caused a fine to be imposed against the school. (*Id*.)

In June 2016, Villar became principal at HSMC. (Compl. ¶ 20.) Thereafter, UFT District Representative Winnie Thompson warned Stapleton "to be careful" because Principal Villar had caused the UFT Chapter Leader at his former school to be terminated. (*Id*. ¶ 21.) Shortly upon his arrival to HSMC, Principal Villar indicated to several people, including the school's parent coordinator, that he did not want Stapleton in his school and he was going to get her fired. (*Id*. ¶ 22.)

On June 14, 2016, Stapleton emailed Thompson regarding Principal Villar's selection process for a Dominican Republic study abroad program for teachers at HSMC. (Compl. ¶ 23.)

---

[1] For purposes of the pending motion to dismiss, the Court accepts Plaintiff's factual allegations as true and draws all reasonable inferences in her favor. *See City of Providence v. Bats Glob. Mkts., Inc.*, 878 F.3d 36, 48 (2d Cir. 2017).

Stapleton expressed her concerns that only some teachers were considered for the program and other qualified candidates were not made aware of, nor considered for, the study abroad program. (*Id*.) On or about October 17, 2017, Stapleton shared union-specific information with older teachers at HSMC (who had been rated as ineffective for the 2016-2017 school year) on how to appeal their rating, which frustrated Principal Villar's agenda to remove these teachers. (*Id*. ¶ 24.)

On or about June 22, 2018, Stapleton advised Thompson that she wanted to file a complaint against Principal Villar based on several incidents. (Compl. ¶ 25.) Thompson assured Stapleton that she would discuss her complaint with the Superintendent over the summer. (*Id*.) On or about November 7, 2018, Stapleton notified Thompson and Principal Villar of a student who was believed to have contracted bedbugs at HSMC, requiring the intervention of the NYCDOE Health and Safety division. (*Id*. ¶ 26.)

On September 25, 2019, Stapleton sent an email to Principal Villar and Assistant Principal ("AP") Galvez requesting coverage for her last-period class so that she, as her late mother's executor, might appear at a court date scheduled for that same day. (Compl. ¶ 27.) After Plaintiff received no email response, she told AP Galvez in person in her office at approximately 9:00 a.m. that she needed her last class, which started at 1:37 p.m., to be covered so that she could appear in court at 2:00 p.m. (*Id*. ¶ 28.) AP Galvez assured Plaintiff that the administration would have her class covered. (*Id.*) At approximately 1:30 p.m., Stapleton sent a student from her class to inform AP Galvez that she had to leave and needed coverage to be sent to cover her class. (*Id.*¶ 29.) AP Galvez sent the student back to inform Stapleton that she did not have anyone to cover the class. (*Id.*) It was too late for Stapleton to find someone to cover the class, so she asked the

students to wait outside the classroom, where they would be monitored by those monitoring the school security cameras, for AP Galvez. (*Id*. ¶ 30.)

On September 26, 2019, Plaintiff emailed Principal Villar and AP Galvez to discuss the events that took place the previous day but received no response. (Compl. ¶ 32.) Principal Villar, with the support of AP Galvez, reported the September 25, 2019 incident against Stapleton to the NYC Office of Special Investigation ("OSI") as class abandonment and the OSI investigator substantiated the claim. (*Id*. ¶ 33.)

In October 2019, Stapleton filed a safety complaint through UFT District Representative Thompson, which then was sent to Principal Villar, regarding a safety issue with a school science lab because the lab had a leak in a pipe that was unable to be properly closed. (Compl. ¶ 34.) On October 2, 2019, Stapleton emailed Principal Villar regarding the lack of parking which was available to the staff of HSMC. (*Id*. ¶ 35.) In subsequent emails, Principal Villar complained that Plaintiff was making him look bad by raising the parking issue. (*Id*.) Also in October 2019, Principal Villar told HSMC's parent coordinator that "the only reason he had not [fired Plaintiff] was because [Plaintiff's] mother was sick, and she was a good daughter." (*Id*. ¶ 22.)

In November 2019, Stapleton was suspended and reassigned from the school to a "rubber room" pending Section 3020-a charges against her based on allegations related to the September 25, 2019 incident. (Compl. ¶ 36.) As a result, she was unable to do "per session work" and was removed as the UFT Chapter Leader for HSMC. (*Id*.)

On January 8, 2020, Stapleton met with Principal Villar and UFT District Representative Thompson to discuss the findings of the OSI investigation regarding the September 25, 2019 incident. (Compl. ¶ 38.) Stapleton subsequently received a disciplinary letter, dated January 15,

2020, related to the incident. (*Id*.) On February 27, 2020, Plaintiff was reassigned to Community Math and Science Prep and her duties were restricted to administrative tasks. (*Id*. ¶ 39.) Following Stapleton's reassignment, Special Education teacher Ramirez told students whom Stapleton had been teaching before her reassignment that Stapleton had been fired for not being a good teacher. (*Id*. ¶ 40.) Several students texted Stapleton about Ramirez's comments. (*Id*.) Stapleton emailed the school administration about the comments, but they took no action. (*Id*.)

In or about March 2020, during the COVID-19 pandemic, Stapleton applied to work in a supervision center to take care of the children of first responders. (Compl. ¶ 41.) After three weeks, Stapleton was removed from the program as a result of her suspension pending the Section 3020-a charges. (*Id*.)

At some point thereafter, Stapleton had a Section 3020-a disciplinary hearing. (Compl. ¶ 42.) Plaintiff alleges that Student Counselor Payero and Building Manager Chenevert falsely testified or manipulated evidence against her at the hearing. (*Id*.) At the conclusion of the hearing, Hearing Officer Steven C. Kasarda dismissed all the disciplinary charges against Stapleton, concluding that "the principal was aware but made no effort to cover the class in full knowledge of [sic] the emergency." (*Id*. ¶ 43.)

On or about June 15, 2022, following the Section 3020-a hearing, Stapleton was reinstated and returned by the NYCDOE to HSMC. (Compl. ¶ 44.) The day she returned, Stapleton was summoned to a disciplinary conference by the new principal, Russo, who formerly had served as an AP at the school under Principal Villar. (*Id*.) Stapleton "was unable to secure union representation in time for the meeting and as a result, the disciplinary meeting has yet to take place." (*Id*. ¶ 45.)

**PROCEDURAL HISTORY**

On or about May 5, 2021, Stapleton filed an action in New York Supreme Court, Bronx County, against the NYCDOE, Villar, Galvez, Payero, Chenevert, the UFT and UFT District Representative Thompson (the "State Court Action"). (State Court Compl., Holmes Decl. Ex. A, ECF No. 28-3, at PDF p. 2-6.[2]) In the State Court Action, Stapleton brought claims for breach of the duty of fair representation pursuant to the collective bargaining agreement ("CBA") between the UFT and the NYCDOE; breach of the duty to provide a harassment free workplace; and unlawful retaliation against the NYCDOE pursuant to New York Civil Service Law ("CSL") § 75-b. (*See id*. at 3-5; *see also* 2/9/2022 Decision & Order, ECF No. 28-4.) As relevant here, Plaintiff alleges that the school administration's handling of the September 25, 2019 incident, and her November 2019 suspension and related reassignment and reduction in pay, were in retaliation for various complaints she made as UFT Chapter Leader. (State Court Compl. ¶¶ 3-13.)

On February 9, 2022, Justice Guzman granted the defendants' motions to dismiss the State Court Action, finding that Plaintiff lacked standing to sue for breach of the CBA; that her breach of the duty of fair representation claims were time-barred; that the action should be dismissed for lack of personal jurisdiction because the UFT and Thompson were not properly served and, in any event, failed to state a claim; and that her CSL § 75-b claim was time-barred and failed to state a plausible claim because Plaintiff was not a "whistleblower." (2/9/2022 Decision & Order at 2-4.) On March 15, 2022, Plaintiff filed a Notice of Appeal and the appeal

---

[2] The Court takes judicial notice of the State Court Complaint, "not for the truth of the matter asserted, but to establish the nature of the claims brought in that action." *Magassouba v. Cascione, Purcigliotti & Galluzzi, P.C.*, No. 20-CV-10996 (PAE) (BCM), 2021 WL 4198219, at *7 (S.D.N.Y. Sept. 15, 2021), *aff'd*, No. 21-2584, 2022 WL 5056329 (2d Cir. Oct. 5, 2022).

remains pending before the Appellate Division First Department. (*See* Notice of Appeal, Pl.'s Opp. Mem. Ex. A, ECF No. 42-1.)

Plaintiff filed the instant action on October 31, 2022. Defendants filed the motion to dismiss that is now before the Court on June 1, 2023. On July 10, 2023, Plaintiff filed a motion to stay the motion to dismiss pending the Appellate Division's decision on the pending appeal. (Pl.'s Letter, ECF No. 39.) The Court denied the motion to stay on July 13, 2023 and indicated that Plaintiff should address the *res judicata* effects of the state court proceedings in her opposition to Defendants' motion. (7/13/2023 Mem. End., ECF No. 41.) The same day, Plaintiff filed her opposition in accordance with the schedule previously set by the Court. (*See* Pl.'s Opp. Mem.) Defendants filed their reply on July 26, 2023. (Defs.' Reply Mem., ECF No. 43.)

## LEGAL STANDARDS

A defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding a motion to dismiss, the Court "must accept as true all of the factual allegations contained in a complaint[,]" but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted); *see also Nguyen v. FXCM Inc.*, 364 F. Supp. 3d 227, 239 (S.D.N.Y. 2019) ("The Court need not accept as true, 'legal conclusions, deductions, or opinions couched as factual allegations.'") (quoting *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007)). When deciding a Rule 12(b)(6) motion, a district court may consider, in addition to the factual

allegations in the Complaint, "documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). In addition, "[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).

"A court may consider a *res judicata* defense on a Rule 12(b)(6) motion to dismiss when the court's inquiry is limited to the plaintiff's complaint, documents attached or incorporated therein, and materials appropriate for judicial notice." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 498 (2d Cir. 2014) (citing *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992)). "When evaluating a prior action to determine whether claims are barred by *res judicata*, 'courts routinely take judicial notice of documents filed in other courts, . . . not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related findings.'" *Spoleto Corp. v. Ethiopian Airlines Grp.*, No. 21-CV-05407 (PAE), 2022 WL 329265, at *5 (S.D.N.Y. Feb. 3, 2022) (quoting *Day v. Distinctive Pers., Inc.*, 656 F. Supp 2d 331, 336 (E.D.N.Y. 2009)), *aff'd*, 2022 WL 17574469 (2d Cir. Dec. 12, 2022).

**DISCUSSION**

Defendants move to dismiss on the ground that "virtually all" of Plaintiff's claims are barred by *res judicata* and that her remaining claims should be dismissed for failure to state a claim. (Defs.' Mem., ECF No. 28-1, at 4-11.) The Court considers each of these arguments in turn.

**I.     Res Judicata**

Defendants first argue that, to the extent that Plaintiff's retaliation claims are based on the same transactions or series of transactions "up to the date of November 2019" that were the subject of the State Court Action, those claims are barred by *res judicata*. (*See* Defs.' Mem. at 4-6.)

"Under the Full Faith and Credit Act, 28 U.S.C. § 1738, a federal court must apply New York res judicata law to New York state court judgments." *Harris v. BNC Mortg., Inc.*, 737 F. App'x 573, 575 (2d Cir. 2018) (citing *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 93 (2d Cir. 2005)). In New York, "[u]nder res judicata, or claim preclusion, a valid final judgment bars future actions between the same parties on the same cause of action." *Simmons v. Trans Express Inc.*, 37 N.Y.3d 107, 111 (2021); *see also Landau, P.C. v. LaRossa, Mitchell & Ross*, 11 N.Y.3d 8, 12 (2008) (quoting *Parker v. Blauvelt Volunteer Fire Co.,* 93 N.Y.2d 343, 347 (1999)). As a general rule, "once a claim is brought to a final conclusion, *all other claims arising out of the same transaction or series of transactions* are barred, even if based upon different theories or if seeking a different remedy." *Simmons*, 37 N.Y.3d at 111 (emphasis in original).

New York courts have not confined the scope of the words "final judgment" to a final judgment in an action. *See Bannon v. Bannon*, 270 N.Y. 484, 489 (1936) ("The scope of the words 'final judgment,' it is true, should not be confined to a final judgment in an action."); *see also*

9

*Kassenoff v. Kassenoff*, No. 22-CV-02162 (KMK), 2023 WL 2648844, at *4 (S.D.N.Y. Mar. 27, 2023) ("New York courts have long held that a final judgment is not required for a decision or order to have preclusive effect.") (citing New York cases). Rather, a final judgment "may include any judicial decision upon a question of fact or law which is not provisional and subject to change and modification in the future by the same tribunal." *Bannon*, 270 N.Y. at 489. Thus, New York courts, and federal courts applying New York law, frequently refer to decisions "on the merits" or dismissals "with prejudice" to describe decisions with preclusive effect. *See, e.g., Landau*, 11 N.Y.3d at 13 ("a dismissal 'without prejudice' lacks a necessary element of res judicata—by its terms such a judgment is not a final determination on the merits"); *People ex rel. Spitzer v. Applied Card Sys., Inc.*, 11 N.Y.3d 105, 122 (2008) (referring to first element of res judicata as "a judgment on the merits rendered by a court of competent jurisdiction"); *Yonkers Contracting Co. v. Port Auth. Trans-Hudson Corp.*, 93 N.Y.2d 375, 380 (1999) ("A dismissal 'with prejudice' generally signifies that the court intended to dismiss the action 'on the merits,' that is, to bring the action to a final conclusion against the plaintiff.").

Here, Defendants assert, without elaboration or adequate briefing, that the State Court Action was adjudicated "on the merits" such that claim preclusion applies to any claims arising out of the same set of facts. (Defs.' Mem. at 5.) However, whether the state court's decision is a "final judgment" for purposes of *res judicata* under New York law[3] is not straightforward. The state court dismissed Plaintiff's retaliation claims on statute of limitations grounds, pursuant to NY CPLR § 3211(a)(5), and for failure to state a claim, pursuant to NY CPLR § 3211(a)(7). (*See*

---

[3] "Whether a dismissal of a state court claim was on the merits is a matter of state law." *Spoleto Corp.*, 2022 WL 329265, at *6.

2/9/2022 Decision & Order, Holmes Decl. Ex. B, ECF No. 28-4, at PDF p. 6.) The court found that Plaintiff's retaliation claims against the "City Defendants," *i.e.,* DOE, Villar, Galvez, Payero and Chenevert were governed by CSL § 75b, which has a one-year statute of limitations. (*See id*.) Because Plaintiff filed the State Court Action in May 2021, the state court found that her retaliation claims were time barred. (*See id*.) The state court also granted the defendants' motion to dismiss, pursuant to CPLR § 3211(a)(7), finding that Plaintiff had "failed to provide any evidence to show that she qualifie[d] as a 'whistleblower' pursuant to the CSL." (*See id*.)

Many New York courts have found that dismissal under NY CPLR § 3211(a)(5) is "on the merits" for purposes of res judicata. *See, e.g., Cohen v. Glass*, 173 A.D.3d 580, 580 (1st Dep't 2019) ("dismissal on the ground that the statute of limitations has expired is a determination on the merits for res judicata purposes.") (citing *Smith v. Russell Sage Coll.*, 54 N.Y.2d 185, 194 (1981)); *Webb v. Greater New York Auto. Dealers Ass'n, Inc.*, 144 A.D.3d 1134, 1135 (2d Dep't 2016) (same). However, the Second Circuit has expressed uncertainty as to whether, under New York law, a New York state court time-bar dismissal precludes bringing the same claim in another jurisdiction with a longer statute of limitations. *See Cloverleaf Realty of N.Y., Inc. v. Town of Wawayanda,* 572 F.3d 93 (2d Cir. 2009). In *Cloverleaf*, the Second Circuit held that a New York state court time-bar dismissal did not preclude bringing the same claim in another jurisdiction with a longer statute of limitations. *See id*. at 96. The *Cloverleaf* court explained that "unless a state's claim-preclusion law departs from the traditional rule [that expiration of the applicable statute of limitations merely bars the remedy and does not extinguish the substantive right] and treats a dismissal for timeliness as a ruling on the merits of the claim, courts in another jurisdiction need not give claim-preclusive effect to a dismissal on timeliness grounds." *Id*. at 95.

11

The Circuit then reasoned that New York did not depart from the traditional rule, relying on the decision by the New York Court of Appeals in *Tanges v. Heidelberg N. Am., Inc.,* 93 N.Y.2d 48 (1999), which it found represented a departure from the Court of Appeals' prior decision in *Russell Sage*. *See id*. at 95-96. However, later, in a different case, the Second Circuit expressed doubt that the New York State Court of Appeals had ever "squarely addressed whether a New York court's judgment dismissing a case based on the expiration of a New York limitations period should have preclusive effect in another jurisdiction with a longer, unexpired limitations period." *Joseph v. Athanasopoulos*, 648 F.3d 58, 67 (2d Cir. 2011); *see also King v. New York City Employees' Ret. Sys.*, 595 F. App'x 10, 11-12 (2d Cir. 2014) (noting Circuit's questioning of its holding in *Cloverleaf*). In *Joseph*, the Circuit noted, for example, that, following *Tanges*, New York appellate courts continued to rely on *Russell Sage* for the proposition that a dismissal pursuant to § 3211(a)(5) had preclusive effect. *See Joseph*, 648 F.3d at 67 ("[N]otwithstanding *Cloverleaf's* reading of *Tanges*, many decisions of the Appellate Division have continued to invoke *Russell Sage*, and no New York court that we are aware of has relied on *Tanges* to conclude that a statute-of-limitations dismissal was not 'on the merits.'"). Although the Circuit certified a question regarding this issue to the New York Court of Appeals, the Court of Appeals ultimately declined to consider it after the appellant withdrew its appeal. *See Best Payphones, Inc. v. City of New York*, No. 01-CV-03924 (JG) (VMS), 2015 WL 13707104, at *20-21 (E.D.N.Y. Feb. 17, 2015) (explaining procedural history). Thus, the issue remains unsettled in this Circuit.

Similarly, whether a dismissal pursuant to § 3211(a)(7) for failure to state a claim is "on the merits" for purposes of *res judicata* is not clear cut. Under New York law, "[a] judgment dismissing a cause of action before the close of the proponent's evidence is not a dismissal on

12

the merits unless it specifie[s] otherwise[.]" N.Y. C.P.L.R. § 5013. In considering the preclusive

effect of dismissals for failure to state a claim under N.Y. C.P.L.R. § 3211(a)(7), many courts have

found that such dismissals are "presumptively not on the merits" unless the court so states, or

the dismissal is with prejudice. *See Spoleto Corp.*, 2022 WL 329265, at *6; *see also Isaly v. Bos.

Globe Media Partners, LLC*, No. 22-CV-02254 (LTS), 2023 WL 144854, at *7 (S.D.N.Y. Jan. 10,

2023); *Mejia v. City of New York*, No. 17-CV-02696 (NGG) (JO), 2020 WL 2837008, at *9 (E.D.N.Y.

May 30, 2020) ("Absent an affirmative indication that a § 3211(a)(7) dismissal constitutes a

decision on the merits, that dismissal precludes, at most, relitigation . . . [of] whether the

dismissed complaint states a cause of action under the applicable pleading standards."default).

However, a dismissal "need not contain the precise words 'on the merits' in order to be given *res

judicata* effect; it suffices that it appears from the judgment that the dismissal was on the merits."

*Spoleto Corp.*, 2022 WL 329265, at *6; *see also Strange v. Montefiore Hosp. & Med. Ctr.*, 59 N.Y.2d

737, 739 (1983). Thus, as the Second Circuit explained in affirming *Spoleto* on other grounds,

"New York courts have repeatedly held that a prior dismissal for failure to state a claim under

CPLR 3211(a)(7) constitutes a judgment on the merits." *Spoleto Corp.*, 2022 WL 17574469, at *2

(citing cases).

Neither side has attempted to address the application of the foregoing standards to this

case and the Court declines to do so in the first instance without further briefing from the

parties.[4] Accordingly, I recommend that Defendants' motion to dismiss on *res judicata* grounds

---

[4] Plaintiff's argument that *res judicata* is not satisfied because there is an appeal pending (*see* Pl.'s Opp. Mem. at 1) is without merit. "Under New York law, the pendency of an appeal does not deprive a challenged judgment of preclusive effect." *Arnold v. Beth Abraham Health Servs., Inc.*, No. 09-CV-06049 (DLC), 2009 WL 5171736, at *4 (S.D.N.Y. Dec. 30, 2009) (citing cases).

be denied without prejudice. Because, as set forth below, I recommend that Plaintiff be granted leave to amend her retaliation claims, Defendants may raise this issue again, as appropriate.

## II.      Defendants' Remaining Arguments

Defendants also argue that Plaintiff's First Amendment retaliation claims are time barred; Plaintiff's remaining allegations fail to state a claim for First Amendment retaliation or retaliation under the Rehabilitation Act; and that Plaintiff's defamation claims should be dismissed as time-barred and for failure to state a claim. (Defs.' Mem. at 7-13.) Rather than oppose Defendants' motion on the merits, Plaintiff argues that she should be given the opportunity to amend her complaint. (*See* Pl.'s Opp. Mem. at 2-4.) Defendants argue that any proposed amendments would be futile as Plaintiff's claims either are barred by *res judicata* or are time barred. (Defs.' Reply Mem. at 4.) For the reasons set forth below, the Court recommends that Plaintiff be granted leave to amend her retaliation claims, but that her defamation claim be dismissed as time barred.

### A.      First Amendment Retaliation And Rehabilitation Act Claims

To state a § 1983 claim for a First Amendment violation, a plaintiff "must show: (1) her speech was constitutionally protected, as a result of which (2) she suffered an adverse employment decision, and (3) a causal connection existed between the speech and the adverse employment decision, so that it can be said that her speech was the motivating factor in the determination." *Gronowski v. Spencer*, 424 F.3d 285, 292 (2d Cir. 2005) (citations omitted). "The statute of limitations for claims brought under Section 1983 is governed by state law, and in this case is the three-year period for personal injury actions under New York State law." *Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015) (quoting *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009)). "While the applicable statute of limitations in a § 1983 case is determined by state

law, 'the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law.'" *Id*. (emphasis in original) (quoting *Wallace v. Kato,* 549 U.S. 384, 388 (2007)). "Rather, it is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Id.* (internal quotation marks omitted).

Section 504 of the Rehabilitation Act prohibits "any program or activity receiving Federal financial assistance" from discriminating against an employee "solely by reason of her or his disability." 29 U.S.C. § 794(a). New York State's three-year personal injury statute of limitations also applies to claims brought under the Rehabilitation Act. *See Bolden v. Westchester Cnty. New York Bd. of Ethics*, No. 22-CV-10555 (LTS), 2023 WL 3976931, at *12 (S.D.N.Y. June 12, 2023) (citing cases). Rehabilitation Act claims "accrue when the plaintiff knew or had reasons to know of the injury giving rise to his [or her] claims." *Id*. (citing *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013)).

Plaintiff alleges that she was suspended in November 2019 and, thus, her First Amendment retaliation claims based on her suspension accrued less than three years prior to the date she filed the Complaint on October 31, 2022. Because Plaintiff does not oppose Defendants' motion regarding failure to state a claim and instead seeks leave to amend, I do not address Defendant's remaining arguments on the merits, which in any event, only purport to address claims that they contend are not barred by *res judicata*. Instead, I recommend that Plaintiff be granted leave to amend her retaliation claims to the extent that they accrued on or after October

31, 2019, three years before the Complaint was filed.[5] *See Stanley v. City Univ. of New York*, No. 18-CV-04844 (PAE), 2023 WL 2714181, at *9 (S.D.N.Y. Mar. 30, 2023) (considering only Rehabilitation Act allegations occurring more than three years before action filed).

**B.      Defamation**

Defendants argue that Plaintiff's defamation claim, which is based on comments allegedly made by Ramirez in February 2020, should be dismissed as time barred. (Defs.' Mem. at 11-12.) The Court agrees. The statute of limitations for a defamation claim under New York law is one year. *See* N.Y. C.P.L.R. § 215(3); *see also McKenzie v. Dow Jones & Co.*, 355 F. App'x 533, 535 (2d Cir. 2009) (applying New York law). This action was not filed until October 31, 2022, more than two years after the time that Ramirez made the purportedly actionable comments in or around February 2020. Accordingly, I recommend that Plaintiff's defamation claim be dismissed and that Plaintiff be denied leave to amend that claim. *See Magassouba*, 2021 WL 4198219, at *10 (denying leave to amend claims barred by statute of limitations as futile).

## CONCLUSION

For the foregoing reasons, I respectfully recommend that Defendants' motion to dismiss be GRANTED IN PART and DENIED IN PART. Specifically, I recommend that Plaintiff's defamation claim be dismissed and that Plaintiff be granted leave to amend her First Amendment and Rehabilitation Act retaliation claims (*i.e.*, her First and Second Claims for Relief).

---

[5] The Court notes that Plaintiff would have had the opportunity to amend as of right had she done so within 21 days of the date Defendants filed their motion to dismiss. *See* Fed. R. Civ. P. 15(a)(1)(B).

Dated:        New York, New York
              September 6, 2023

_____

**STEWART D. AARON**
**United States Magistrate Judge**

\*                    \*                    \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service

of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1)

and Rule 72(b) of the Federal Rules of Civil Procedure. A party may respond to another party's

objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such

objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. 72(b). Any requests for an extension of time for filing objections must be

addressed to Judge Engelmayer.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF**

**OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).