```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 04/18/2024
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Katy Stapleton,

                              Plaintiff,

          -against-

New York City Department of Education et
al.,

                              Defendants.

**1:22-cv-09351 (DEH) (SDA)**

**REPORT AND RECOMMENDATION**

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

**TO THE HONORABLE DALE E. HO, UNITED STATES DISTRICT JUDGE:**

Plaintiff Katy Stapleton ("Plaintiff" or "Stapleton") brings this action against defendants

New York City Department of Education ("NYCDOE") and individual defendants Juan Villar

("Principal Villar"), Bienvenida Galvez ("AP Galvez"), Sofia Russo ("Russo"), Elizabeth Payero

("Payero"), Randall Chenevert ("Chenevert") and Marilyn Ramirez ("Ramirez")[1] (collectively, the

"Individual Defendants" and, together with NYCDOE, "Defendants") asserting claims for First

Amendment retaliation in violation of 42 U.S.C. § 1983, as well as claims for retaliation and hostile

work environment in violation the Rehabilitation Act of 1973 (the "Rehabilitation Act"); Title VII

of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; the New York State Human

Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*; and the New Yok City Human Rights Law

("NYCHRL"), N.Y. City Admin. Code § 8-101 *et seq.* (FAC ¶¶ 52-85.)

---

[1] The Court notes that the caption of the First Amended Complaint ("FAC") refers to the last defendant as
Marilyn Rodriguez, but the FAC itself refers to Marilyn Ramirez, as did the original Complaint. (*See* FAC,
ECF No. 48, ¶ 18; Compl., ECF No. 1, at PDF p. 1.)

Now before the Court is Defendants' motion to dismiss the FAC, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim. (Defs.' 11/20/23 Not. of Mot., ECF No. 53.) For the reasons set forth below, I respectfully recommend that Defendants' motion be GRANTED.

## FACTUAL ALLEGATIONS[2]

Stapleton is a tenured Spanish teacher employed by the NYCDOE and has taught at the High School for Media and Communications ("HSMC") since February 2001. (FAC ¶¶ 11, 19-20.) In February 2014, Stapleton took over as Chapter Leader for the United Federation of Teachers ("UFT") at HSMC and, on or about June 5, 2015, was elected to that position for a term beginning in July 2015. (*Id*. ¶ 22.) Stapleton was very outspoken in her duties as UFT Chapter Leader, reporting, among other things, to her UFT district representative about the failure of the school administration to post per session positions, the misallocation of budget funds and "special education violations of the New York State Education Department's regulations regarding the administration's failure to hold a zero period for ESL [*i.e.*, English as a Second Language] and special education students." (*Id*. ¶ 24.) Stapleton's complaints triggered an investigation against the school administration, which caused a fine to be imposed against the school. (*Id*.)

In June 2016, Villar became principal at HSMC. (FAC ¶ 25.) Thereafter, UFT District Representative Winnie Thompson warned Stapleton to be careful because Principal Villar had caused the UFT Chapter Leader at his former school to be terminated. (*Id*. ¶ 26.) Shortly upon his arrival to HSMC, Principal Villar indicated to several people, including the school's parent

---

[2] For purposes of the pending motion to dismiss, the Court accepts Plaintiff's factual allegations as true and draws all reasonable inferences in her favor. *See City of Providence v. Bats Glob. Mkts., Inc.*, 878 F.3d 36, 48 (2d Cir. 2017).

coordinator, that he did not want Stapleton in his school and he was going to get her fired. (*Id*. ¶ 27.)

On June 14, 2016, Stapleton emailed Thompson regarding Principal Villar's selection process for a Dominican Republic study abroad program for teachers at HSMC. (FAC ¶ 28.) Stapleton expressed her concerns that only some teachers were considered for the program and other qualified candidates were not made aware of, nor considered for, the study abroad program. (*Id*.)

On or about October 17, 2017, Stapleton shared union-specific information with older teachers at HSMC who had been rated as ineffective for the 2016-17 school year on how to appeal their ratings, which frustrated Principal Villar's agenda to remove these teachers. (FAC ¶ 29.) On or about November 7, 2018, Stapleton notified Thompson and Principal Villar of a student who was believed to have contracted bedbugs at HSMC, requiring the intervention of the NYCDOE Health and Safety division. (*Id*. ¶ 30.)

On September 25, 2019, Stapleton sent an email to Principal Villar and Assistant Principal ("AP") Galvez requesting coverage for her last-period class so that she, as her late mother's executor, could appear at a court date scheduled for that same day. (FAC ¶ 31.) After Stapleton received no email response, she told AP Galvez in person in her office at approximately 9:00 a.m. that she needed her last class, which started at 1:37 p.m., to be covered so that she could appear in court at 2:00 p.m. (*Id*. ¶ 32.) AP Galvez assured Stapleton that the administration would have her class covered. (*Id.*) At approximately 1:30 p.m., Stapleton sent a student from her class to inform AP Galvez that she had to leave and needed coverage to be sent to cover her class. (*Id.*¶ 33.) AP Galvez sent the student back to inform Stapleton that she did not have anyone to cover

3

the class. (*Id*.) It was too late for Stapleton to find someone to cover the class, so she asked the students to wait for AP Galvez outside the classroom, where they would be monitored by individuals monitoring the school security cameras. (*Id*. ¶ 34.)

On September 26, 2019, Plaintiff emailed Principal Villar and AP Galvez to discuss the events that took place the previous day but received no response. (FAC ¶ 36.) Principal Villar, with the support of AP Galvez, reported the September 25, 2019 incident against Stapleton to the NYC Office of Special Investigation ("OSI") as class abandonment and the OSI investigator substantiated the claim. (*Id*. ¶ 37.)

In October 2019, Stapleton filed a safety complaint through UFT District Representative Thompson, which then was sent to Principal Villar, regarding a safety issue with a school science lab because the lab had a leak in a pipe that was unable to be properly closed. (FAC ¶ 38.) On October 2, 2019, Stapleton emailed Principal Villar regarding the lack of parking available to the staff of HSMC. (*Id*. ¶ 39.) In subsequent emails between October 2 and 8, 2019, Plaintiff expressed concerns regarding unavailable parking and tardiness that could result, and Principal Villar complained that Plaintiff was making him look bad by raising the parking issue. (*Id*.) Also in October 2019, Principal Villar told HSMC's parent coordinator that "the only reason he had not [fired Stapleton] was because [Stapleton's] mother was sick, and she was a good daughter." (*Id*. ¶ 27.)

In November 2019, Stapleton was suspended and reassigned from the school to a "rubber room" pending Section 3020-a charges[3] against her based upon allegations related to the

---

[3] Section 3020-a of the New York Education Law contains disciplinary procedures and penalties for teachers with tenure. *See* N.Y. Educ. Law § 3020-a.

4

September 25, 2019 incident. (FAC ¶ 40.) As a result, she was unable to do "per session work" and was removed as the UFT Chapter Leader for HSMC. (*Id*.)

On January 8, 2020, Stapleton met with Principal Villar and UFT District Representative Thompson to discuss the findings of the OSI investigation regarding the September 25, 2019 incident. (FAC ¶ 42.) Stapleton subsequently received a disciplinary letter, dated January 15, 2020, related to the incident. (*Id*.) On February 27, 2020, Stapleton was reassigned to Community Math and Science Prep and her duties were restricted to administrative tasks. (*Id*. ¶ 43.) Following Stapleton's reassignment, Special Education teacher Ramirez told students who Stapleton had been teaching before her reassignment that Stapleton had been fired for not being a good teacher. (*Id*. ¶ 44.) Several students texted Stapleton about Ramirez's comments. (*Id*.) Stapleton emailed the school administration about the comments, but they took no action. (*Id*.)

In or about March 2020, during the COVID-19 pandemic, Stapleton applied to work in a supervision center to take care of the children of first responders. (FAC ¶ 45.) After three weeks, Stapleton was removed from the program as a result of her suspension pending the Section 3020-a charges. (*Id*.)

At some point between March and June 2020, Stapleton had a Section 3020-a disciplinary hearing. (*See* FAC ¶¶ 46-48.) Stapleton alleges that Student Counselor Payero and Building Manager Chenevert falsely testified or manipulated evidence against her at the hearing. (*Id*.) At the conclusion of the hearing, Hearing Officer Steven C. Kasarda dismissed all the disciplinary charges against Stapleton, concluding that "the principal was aware but made no effort to cover the class in full knowledge of the emergency." (*Id*. ¶ 47.)

On or about June 15, 2022, following the Section 3020-a hearing, the NYCDOE reinstated Stapleton and she returned to HSMC. (FAC ¶ 48.) The day she returned, Stapleton was summoned to a disciplinary conference by the new principal, Russo, who formerly had served as an AP at the school under Principal Villar. (*Id*.) Stapleton "was unable to secure union representation in time for the meeting and as a result, the disciplinary meeting has yet to take place." (*Id*. ¶ 49.)

## **PROCEDURAL HISTORY**

On or about May 5, 2021, Stapleton filed an action in New York Supreme Court, Bronx County, against the NYCDOE, Villar, Galvez, Payero, Chenevert, the UFT and UFT District Representative Thompson (the "State Court Action"). (State Court Compl., Chazin Decl. Ex. A, ECF No. 53-2, at PDF p. 2-6.[4]) In the State Court Action, Stapleton brought claims for breach of the duty of fair representation pursuant to the collective bargaining agreement ("CBA") between the UFT and the NYCDOE; breach of the duty to provide a harassment free workplace; and unlawful retaliation against the NYCDOE pursuant to New York Civil Service Law ("CSL") § 75-b. (*See id*. at 3-5; *see also* 2/9/2022 Decision & Order, ECF No. 53-3.)

On February 9, 2022, Justice Guzman granted the defendants' motions to dismiss the State Court Action, finding that Stapleton lacked standing to sue for breach of the CBA; that her breach of the duty of fair representation claims were time-barred; that the action should be dismissed for lack of personal jurisdiction because the UFT and Thompson were not properly served and, in any event, failed to state a claim; and that her CSL § 75-b claim was time-barred

---

[4] The Court takes judicial notice of the State Court Complaint, "not for the truth of the matter asserted, but to establish the nature of the claims brought in that action." *Magassouba v. Cascione, Purcigliotti & Galluzzi, P.C.*, No. 20-CV-10996 (PAE) (BCM), 2021 WL 4198219, at *7 (S.D.N.Y. Sept. 15, 2021), *aff'd*, 2022 WL 5056329 (2d Cir. Oct. 5, 2022).

and failed to state a plausible claim because Stapleton was not a "whistleblower" [for purposes of the CSL]. (2/9/2022 Decision & Order at 2-4.)

Plaintiff filed the instant action on October 31, 2022 bringing claims for First Amendment retaliation, retaliation in violation of the Rehabilitation Act against the NYCDOE and defamation against Ramirez. (See Compl., ECF No. 1.) Defendants filed a motion to dismiss the Complaint on June 1, 2023. (6/1/23 Motion, ECF No. 28.) On September 6, 2023, I recommended that Defendant's motion be granted in part and denied in part and that Plaintiff be granted leave to amend. See Stapleton v. New York City Dep't of Educ., No. 22-CV-09351 (PAE) (SDA), 2023 WL 6163939 (S.D.N.Y. Sept. 6, 2023), report and recommendation adopted, 2023 WL 6163141 (S.D.N.Y. Sept. 21, 2023).[5] September 21, 2023, District Judge Engelmayer adopted my Report and Recommendation on September 21, 2023. See Stapleton, 2023 WL 6163141, at *1.

Plaintiff filed her amended pleading on October 6, 2023. (See FAC.) In her amended pleading, in addition to repleading her First Amendment retaliation claims and her claims for retaliation claims under the Rehabilitation Act, Plaintiff added claims under Title VII, the NYSHRL and the NYCHRL. (See id. ¶¶ 62-85.)

On October 13, 2023, this action was reassigned to District Judge Ho. On November 20, 2023, Defendants filed the motion to dismiss that is now before the Court. (See Defs.' 11/20/23 Notice of Mot.) Plaintiff filed her opposition on December 14, 2023. (Pl.'s Opp. Mem., ECF No. 57.) On December 18, 2023, Judge Ho referred the pending motion to me for a

---

[5] Because Plaintiff did not oppose Defendants' motion for failure to state a claim regarding her First Amendment retaliation or Rehabilitation Act claims on the merits, and instead sought leave to amend, I did not reach the substance of those claims and recommended that Plaintiff be granted leave to amend. See Stapleton, 2023 WL 6163939, at *8. I recommended that Plaintiff's defamation claim be dismissed, without leave to amend, as time barred. See id.

Report and Recommendation. (Am. Order of Ref., ECF No. 58.) Defendants filed their reply memorandum on January 11, 2024. (Defs.' Reply Mem., ECF No. 59.)

## LEGAL STANDARDS ON MOTION TO DISMISS

A defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding a motion to dismiss, the Court "must accept as true all of the factual allegations contained in a complaint[,]" but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted); *see also Nguyen v. FXCM Inc.*, 364 F. Supp. 3d 227, 239 (S.D.N.Y. 2019) ("The Court need not accept as true, 'legal conclusions, deductions, or opinions couched as factual allegations.'") (quoting *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007)). When deciding a Rule 12(b)(6) motion, a district court may consider, in addition to the factual allegations in the Complaint, "documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). In addition, "[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).

**DISCUSSION**

Defendants now move to dismiss all claims contained in the FAC. (*See* Defs.' 11/20/23 Mem., ECF No. 54, at 4-23.) Each of the claims will be addressed in turn.

**I.    First Amendment Retaliation (First Claim For Relief)**

Plaintiff alleges that Defendants violated 42 U.S.C. § 1983 by retaliating against her for advocating for other UFT members and students, as a Union Chapter Leader, in violation of the First Amendment. (FAC ¶ 53.)

To state a § 1983 claim for First Amendment retaliation "a plaintiff must establish (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Shara v. Maine-Endwell Cent. Sch. Dist.*, 46 F.4th 77, 82 (2d Cir. 2022). Moreover, to state a claim against NYCDOE, a plaintiff must allege a "(1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." *Agosto v. New York City Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020) (citing *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)).

Defendants move to dismiss on the grounds that none of Plaintiff's alleged speech is of the type protected by the First Amendment and, in any event, Plaintiff has not plausibly alleged a causal connection between her speech and any adverse action. (Defs.' Mem. at 14-16.) Defendants also argue that Plaintiff's claim against NYCDOE should be dismissed because she has failed to allege any elements required to hold a municipality liable under § 1983, including a municipal policy or custom, and does not allege personal involvement of each of the Individual Defendants. (*See id*. at 16-17, 20-21.)

A.        **Protected Speech**

The Second Circuit and the Supreme Court "have long recognized that 'the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern.'" *Shara*, 46 F.4th at 82 (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006)). Thus, "in assessing the first prong of the retaliation test – whether a public employee's speech is protected – [the court] must consider two separate subquestions: (1) whether the employee spoke as a citizen rather than solely as an employee, and (2) whether [she] spoke on a matter of public concern." *Id*. at 82-83 (internal quotation marks omitted). "If both questions are answered in the affirmative, [the Court] may proceed to consider whether the employer had an adequate justification for treating the employee differently from any other member of the general public based on the government's needs as an employer." *Id.* at 83 (internal quotation marks omitted).

Because Defendants address only the second subquestion of whether Plaintiff's speech was a matter of public concern (*see* Defs.' Mem. at 14-15), the Court will assume for its analysis that the first subquestion has been satisfied. Plaintiff alleges that she "was speaking as a citizen on a matter of public concern on multiple occasions including, but not limited to, when she inquired as to the hiring criteria used by Principal Villar for the Dominican Republic study abroad program, raised concerns about parking around the school, informed Principal Villar about the possible bedbug infestation at the school, and made safety complaints to UFT District Representative Winnie Thompson regarding a leaking gas pipe within the science lab of the school." (FAC ¶ 55.) Plaintiff further alleges that "[t]hroughout the 2018-19 school year, Plaintiff

10

filed several formal and informal grievances, observation appeals, and safety complaints on behalf of herself and other teachers to the administration of the school[.]" (*Id*. ¶ 56.)

"To constitute speech on a matter of public concern, an employee's expression must 'be fairly considered as relating to any matter of political, social, or other concern to the community.'" *Shara*, 46 F.4th at 84 (quoting *Montero v. City of Yonkers*, 890 F.3d 386, 399 (2d Cir. 2018)). "Whether speech is on a matter of public concern is a question of law that courts decide by examining the content, form, and context of a given statement, as revealed by the whole record." *Id.* (internal quotation marks omitted). "The heart of the matter is whether the employee's speech was 'calculated to redress personal grievances or whether it had a broader public purpose.'" *McCrain v. Metro. Trans. Auth.*, No. 17-CV-02520 (RA), 2020 WL 1285634, at *11 (S.D.N.Y. Mar. 18, 2020) (quoting *Ruotolo v. City of New York*, 514 F.3d 184, 189 (2d Cir. 2008)). "Internal workplace complaints, especially those filed with an employer using an internal grievance procedure, rather than through a channel available to the public, are rarely made to communicate to the public or to advance a political or social point of view beyond the employment context." *Shara*, 46 F.4th at 84 (internal quotation marks and alterations omitted).

The matter is more complicated, however, where, as here, a public employee speaks not just as an employee, but as a union representative. *See Zabar v. New York City Dep't of Educ.*, No. 18-CV-06657 (PGG), 2020 WL 2423450, at *8 (S.D.N.Y. May 12, 2020) ("Speech by public employee union members concerning union activities and work-related matters presents difficult issues in the context of Section 1983 First Amendment retaliation claims."). In *Clue v. Johnson*, 179 F.3d 57 (2d Cir. 1999), the Second Circuit stated, in dicta, that "retaliation against public employees solely for their union activities violates the First Amendment" and "raises a public

concern[.]" *Id*. at 60-61. However, the Second Circuit later clarified that it "obviously did not mean that all activities undertaken through a union necessarily become matters of public concern merely by virtue of their collateral connection to the union." *Lynch v. Ackley*, 811 F.3d 569, 582 (2d Cir. 2016).

In *Lynch*, the Second Circuit distinguished between disputes that "invoke[ ] basic aspects of the right to unionization[,]" which do touch on matters of public concern and "labor versus management disputes" about the terms and conditions of employment that "have a strong flavor of 'personal grievance' and bear only a collateral connection to the union." *Lynch*, 811 F.3d at 581. Following *Lynch*, courts in this Circuit have found that speech by a public employee that touches on union membership and the role of unions constitutes a matter of public concern. *See, e.g., Loc. 3599, NYC Dep't of Env't Prot. Tech. Pro. Emps. v. City of New York*, No. 23-CV-01035 (JGLC), 2024 WL 966077, at *9 (S.D.N.Y. Mar. 6, 2024) (alleged retaliation based solely on union members satisfied first element of a First Amendment retaliation claim); *Agosto*, 2019 WL 13255510, at *4 (grievance involving collective bargaining agreement, request for budgetary and other documents and role of union in approving policy changes constituted protected speech since plaintiff's stake related to duties as union representative not duties as teacher).

In contrast, courts have found that speech does not involve a matter of public concern when the plaintiff's union activity "concerned the terms and conditions of employment and was in essence a personal grievance, even where it affected multiple employees." *Payson v. Bd. of Educ. of Mount Pleasant Cottage Sch., USFD*, No. 14-CV-09696 (JCM), 2017 WL 4221455, at *18-19 (S.D.N.Y. Sept. 20, 2017) (filing snow day grievance, circulating morale survey and raising concern of after-hours professional development work not speech on matter of concern even

when raised by union representative); *Bagarozzi v. New York City Dep't of Educ.*, No. 18-CV-04893 (RA), 2019 WL 1454316, at *9 (S.D.N.Y. Mar. 31, 2019) (grievance relating to staff parking privileges did not touch on matter of public concern).

The Court finds that Plaintiff's allegations regarding the study abroad program and lack of parking at the school do not constitute matters of public concern as they pertain to issues that would be of concern only to employees and relate to the terms and conditions of employment.[6] *See Lynch*, 811 F.3d at 581. Plaintiff does not allege that these complaints had a broader public purpose or explain how her advocacy as a Chapter Leader on behalf of other teachers "would transform those disputes into matters of public concern." *See Agosto*, 982 F.3d at 97; *see also Shara*, 46 F.4th at 88 (plaintiff's speech did not take on "a public character merely because [he was] also a union officer").

In contrast, Plaintiff's alleged speech regarding a bedbug incident at the school and a safety issue in the science lab present a closer question. It is possible that Plaintiff could prove that this speech, which relates more broadly to health and safety, is protected by the First Amendment. *See Spencer v. Philemy*, 540 F. App'x 69, 71 (2d Cir. 2013) (speech regarding safety concerns was on matter of public concern). However, even assuming that some of Plaintiff's speech is protected, the Court agrees with Defendants that Plaintiff has failed to plausibly allege a causal connection between the alleged protected speech and any adverse action, which the Court discusses next. (*See* Defs.' Mem. at 16.)

---

[6] Plaintiff's allegation regarding the study abroad program also is insufficient because she does not allege that any Defendant was aware of her email to UFT District Representative Thompson regarding concerns about the selection process for the study abroad program. *See Schulz v. Commack Union Free Sch. Dist.*, 664 F. Supp. 3d 296, 309 (E.D.N.Y. 2023) (dismissing First Amendment retaliation claim when, *inter alia*, no plausible allegations that defendants were aware of protected speech).

**B.**     <u>**Causal Connection**</u>

For purposes of a First Amendment retaliation claim, an adverse employment action is "one that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Specht v. City of New York*, 15 F.4th 594, 604 (2d Cir. 2021) (internal quotation marks omitted). "[A] plaintiff must show that the protected speech was a substantial motivating factor for the adverse employment action." *Heim v. Daniel*, 81 F.4th 212, 222 (2d Cir. 2023). A plaintiff may establish causation either "directly by evidence of retaliatory animus" or "indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment." *Morales v. City of New York*, No. 22-009250CV, 2022 WL 2840035, at *2 (2d Cir. 2022). "Temporal proximity is strong circumstantial evidence of improper intent." *Anderson v. State of New York, Office of Court Admin.*, 614 F. Supp. 2d 404, 430 (S.D.N.Y. 2009). "On a motion to dismiss, a reasonable inference of a causal connection is all that is required." *Gonzalez v. City of New York*, 377 F. Supp. 3d 273, 295 (S.D.N.Y. 2019) (citing *Posr v. Court Officer Shield # 207*, 180 F.3d 409, 418 (2d Cir. 1999)).

Plaintiff alleges that Principal Villar and AP Galvez "intentionally neglected their duties to arrange for, or personally provide coverage to Plaintiff in an effort to retaliate against her for her role as UFT chapter leader of the school and the numerous complaints she made" and, in contrast, "another teacher within the school had an emergency and needed to leave the building before she had the chance to inform the administration" but faced no disciplinary action. (FAC ¶¶ 35, 41.) Plaintiff also alleges that, prior to obtaining her position as UFT Chapter Leader, she never had received any disciplinary letters and that she was retaliated against within close temporal proximity to her complaints and grievances. (*Id*. ¶¶ 54, 56.)

14

Plaintiff alleges that she raised the complaint regarding the bedbug issue in November 2018. (FAC ¶ 30.) This was well before the September 2019 class coverage incident and the alleged adverse acts that followed; thus, outside the temporal scope recognized by courts in this circuit. *See Raymond v. City of New York*, 317 F. Supp. 3d 746, 774 (S.D.N.Y. 2018) ("Courts in this circuit often find a limit at two or three months and almost universally disapprove longer time periods."). Plaintiff's complaint regarding the school science lab was closer in time to her November 2019 suspension, but post-dated the class coverage incident, which is what Plaintiff alleges led to the suspension and other adverse actions. (*See* FAC ¶ 40 ("In November 2019, Plaintiff was suspended and reassigned from the school to a 'rubber room' pending Section 3020-a charges against her based-on allegations related to the September 25, 2019 incident.").) Thus, the chronology of events does not provide a basis from which a reasonable inference can be drawn that the alleged adverse actions were substantially caused by Plaintiff's complaints as UFT Chapter Leader. *Cf Gagliardi v. Village of Pawling*, 18 F.3d 188, 195 (2d Cir. 1994) (denying motion to dismiss First Amendment retaliation claim where complaint provided detailed chronology of events from which retaliatory intent could be inferred).

Beyond temporal proximity, Plaintiff's remaining allegations also are insufficient for the Court to reasonably infer a causal connection. Plaintiff alleges that another teacher was not disciplined for "needing to leave the building before she had the chance to inform the administration" (FAC ¶ 41), but does not allege that such teacher left her class unattended or that the situation was otherwise similar to Plaintiff's own class coverage incident. Moreover, the fact that Plaintiff had never received a disciplinary letter prior to becoming UFT Chapter Leader (*id*. ¶ 54) does not support an inference of causation under the circumstances here, where

15

Plaintiff had been acting as Chapter Leader for over five years prior to any adverse action. (*See id.* ¶ 22.) Finally, Plaintiff's allegation that Principal Villar and AP Galvez intentionally failed to cover her class in retaliation for her complaints as UFT Chapter Leader (*id.* ¶ 35) is the sort of conclusory allegation that is insufficient to withstand a motion to dismiss. *See Sutton v. Stony Brook Univ.*, No. 21-2055, 2022 WL 4479509, at *4 (2d Cir. Sept. 27, 2022) (affirming dismissal of First Amendment retaliation claim for failure to plead nonconclusory allegation of retaliation); *see also Bagarozzi*, 2019 WL 1454316, at *10 (dismissing First Amendment retaliation claim when amended complaint was "devoid of any plausible allegations linking [protected speech] to subsequent retaliation"). For these reasons, I recommend that Plaintiff's First Amendment Retaliation claim be dismissed.

### C.    Other Grounds For Dismissal As To Defendants NYCDOE, Russo, Payero, Chenevert and Ramirez

There is an independent ground for dismissal of the First Amendment retaliation claims against NYCDOE. (*See* Defs.' Mem. at 16-17 (addressing Plaintiff's failure to allege *Monell* liability).) The First Amendment retaliation claims against the NYCDOE should be dismissed because Plaintiff has not plausibly alleged an official policy or custom that led to the purported constitutional violations. *See Mitchell v. New York City Dep't of Educ.*, No. 20-CV-01555 (PGG), 2022 WL 621956, at *7 (S.D.N.Y. Mar. 3, 2022) (dismissing § 1981 claim for failure to allege municipal policy and noting that *Monell* liability could not be predicated on acts of school principal because principal was not final policymaker). Thus, I recommend that the First Amendment retaliation claims against NYCDOE be dismissed.

For the same reason, Plaintiff's claims against the Individual Defendants in their official capacities should be dismissed. *See Gonzalez v. City of New York*, 377 F. Supp. 3d 273, 287

16

(S.D.N.Y. 2019) (dismissing § 1983 claims against individual defendants in official capacities when no allegations that acted pursuant to municipal policy or custom) (citing *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) ("[W]hen the defendant . . . [is an] individual sued in his official capacity . . . the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom.")). I recommend that the First Amendment retaliation claims against Russo, Payero, Chenevert and Ramirez in their official capacities be dismissed.

I further recommend that the First Amendment retaliation claims against Defendants Russo, Payero, Chenevert and Ramirez in their individual capacities be dismissed on the ground that Plaintiff does not allege their personal involvement in the alleged retaliation. "It is well-settled that 'the personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Potrzeba v. Sherburne-Earlville Cent. Sch. Dist. Bd. of Educ.*, No. 23-CV-00191 (BKS) (ML), 2023 WL 8827178, at *4 (N.D.N.Y. Dec. 21, 2023) (quoting *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016)). Plaintiff alleges that Principal Villar and AP Galvez neglected to cover her class in retaliation for her complaints, but does not allege involvement by the other Individual Defendants in that incident or later retaliatory conduct. (FAC ¶¶ 35, 37.) The only allegation regarding Principal Russo is that she summoned Plaintiff to a disciplinary conference, which has yet to take place. (*Id*. ¶¶ 48-49.) Plaintiff does not allege that this act was in retaliation for protected speech or that Principal Russo otherwise participated in any of the alleged retaliatory actions.

As for Payero and Chenevert, Plaintiff alleges only that they "falsely testified or manipulated evidence" against her at the Section 3020-a disciplinary hearing. (FAC ¶ 46.) Plaintiff does not allege that the allegedly false testimony was retaliatory or resulted in an adverse action.

17

Finally, with respect to Ramirez, Plaintiff alleges only that Ramirez told students that Plaintiff was fired for not being a good teacher. (*Id*. ¶ 44.) The Court previously dismissed Plaintiff's claim for defamation against Ramirez. *See Stapleton,* 2023 WL 6163939, at *8.

Accordingly, because Plaintiff has not alleged personal involvement of Defendants Russo, Payero, Chenevert and/or Ramirez in conduct that allegedly led to violation of her constitutional rights, I recommend that her First Amendment retaliation claims against them in their individual capacities be dismissed. *See Holmes v. Poskanzer*, 342 F. App'x 651, 653 (2d Cir. 2009) (affirming dismissal of First Amendment retaliation claims when plaintiff did not allege personal involvement).

## II.    Rehabilitation Act (Second Claim For Relief)

In the FAC, Plaintiff again asserts a claim for violation of the Rehabilitation Act, this time against all Defendants,[7] alleging that Defendants retaliated against her "for advocating for special education students regarding their special needs" in her role as UFT Chapter Leader.[8] (FAC ¶¶ 58-61.) As a preliminary matter, Plaintiff's Rehabilitation Act claim against the Individual Defendants should be dismissed because "it is well-established that there is no individual liability under the . . . Rehabilitation Act, whether the individual is sued in their official or individual capacity." *Perros v. County of Nassau*, 238 F. Supp. 3d 395, 402 n.3 (E.D.N.Y. 2017); *see also Goe v. Zucker*, 43 F.4th 19, 35 (2d Cir. 2022) (affirming dismissal of Rehabilitation Act claims against

---

[7] In the initial Complaint, the Rehabilitation Act claim only was asserted against the NYCDOE. (Compl. ¶¶ 54-57.)

[8] The Court previously dismissed Plaintiff's Rehabilitation Act claim against NYCDOE to the extent it accrued prior to October 31, 2019 without addressing the merits and granted leave to amend any Rehabilitation Act claim accruing on or after that date. *See Stapleton*, 2023 WL 6163939, at *7.

individual school district officials in their individual capacities and citing *Perros*).[9] Thus, the Court recommends dismissal of Plaintiff's claim for violation of the Rehabilitation Act against the Individual Defendants and analyzes Plaintiff's Rehabilitation Act claim only with respect to NYCDOE.

Section 504 of the Rehabilitation Act prohibits "any program or activity receiving Federal financial assistance" from discriminating against an employee "solely by reason of her or his disability." 29 U.S.C. § 794(a). To establish a retaliation claim under the Rehabilitation Act, a plaintiff must show "that: (1) [s]he engaged in an activity protected by the [Rehabilitation Act]; (2) the employer was aware of this activity; (3) the employer took adverse employment action against [her]; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Volpe v. New York City Dep't of Educ.*, 195 F. Supp. 3d 582, 595 (S.D.N.Y. 2016) (citing *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002)).

Defendants first argue that Plaintiff failed to identify a protected activity under the Rehabilitation Act (*see* Defs.' Mem. at 7-8), but do not address Plaintiff's proffered basis of her claim, *i.e.*, advocating for special education students by reporting the administration's failure to hold a zero period for special education students. (*See* FAC ¶¶ 24, 58-61.) A non-disabled individual who complains of disability discrimination engages in protected activity under the Rehabilitation Act. *See Volpe*, 195 F. Supp. at 596.

---

[9] To the extent the Second Circuit has not explicitly decided whether individuals may be sued in their official capacities under the Rehabilitation Act, the Court finds that those claims are nonetheless subject to dismissal since they are "wholly redundant" of Plaintiff's claims against the NYCDOE. *See Lopez v. New York City Dep't of Educ.*, No. 17-CV-09205 (RA), 2020 WL 4340947, at *14 n.9 (S.D.N.Y. July 28, 2020); *see also Payson*, 2017 WL 4221455, at *22.

The Court notes that the Individuals with Disabilities Education Act ("IDEA"), which seeks to "ensure that all children with disabilities have available to them a free appropriate public education," 20 U.S.C. § 1400(d)(1)(A), sets forth a different standard for disability such that "an IDEA disability is not equivalent to a disability as cognizable under the [Americans with Disabilities Act ("ADA")] and Section 504 [of the Rehabilitation Act]." *B.C. v. Mount Vernon Sch. Dist.*, 837 F.3d 152, 161 (2d Cir. 2016). Thus, it is an open question of whether "a plaintiff must state facts to support that the plaintiff's advocacy was for students disabled under the IDEA *and* the ADA [or Rehabilitation Act[10]] in order to establish that the plaintiff engaged in protected activity under the ADA [or Rehabilitation Act]." *Pistello v. Bd. of Educ. of Canastota Cent. Sch. Dist.*, No. 16-CV-00212 (LEK) (ATB), 2017 WL 1194025, at *8 (N.D.N.Y. Mar. 30, 2017) (emphasis in original). In *Pistello*, the Court found that the plaintiff plausibly alleged that she "had a good faith, reasonable belief that her advocacy on behalf of the disabled students with [Individual Education Plans] concerned a violation of the ADA" and also declined to dismiss the plaintiff's retaliation claim on the basis that IDEA disabilities do not qualify as ADA disabilities because the school district did not raise the issue in its motion to dismiss. *See id*. at *9. However, other courts in this District continue to conclude "that advocacy on behalf of special education students constitutes protected activity under . . . the Rehabilitation Act." *Lopez*, 2020 WL 4340947, at *11; *see also Ford v. New York City Bd. of Educ.*, No. 19-CV-06327 (JPC) (KHP), 2022 WL 1063036, at *8 (S.D.N.Y. Apr. 8, 2022) ("[A]dvocacy on behalf of special education students constitutes protected activity under . . . the Rehabilitation Act."). The Court need not decide this issue, however, because even

_____

[10] "As the standards for actions under . . . the ADA and the Rehabilitation Act are generally equivalent, [courts in this Circuit] analyze such claims together." *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 187 (2d Cir. 2015).

assuming that Plaintiff's allegations are sufficient at this stage to plausibly allege protected activity, the Court finds that she has failed to plausibly allege a causal connection between the alleged activity and an adverse employment action, as discussed further below.[11] Before addressing the causation element, however, the Court addresses Defendants' argument that Plaintiff has failed to identify an adverse employment action under the Rehabilitation Act. (Defs.' Mem. at 8-9.)

Plaintiff alleges that, as a result of her advocating for special education students, she was suspended from her teaching position in November 2019; received a disciplinary letter to her file in January 2020; and lost summer and per session work opportunities after Section 3020-a charges were proffered against her. (FAC ¶ 61; *see also id*. ¶¶ 40, 42.) The Court finds that these allegations are sufficient to plausibly allege a materially adverse action which, for retaliation claims, is "one that 'might well have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Volpe*, 195 F. Supp. 3d at 595 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).[12]

---

[11] The Court finds that Plaintiff's allegation that her report of special education violations "trigger[ed] an investigation against the school administration" (FAC ¶ 24) is sufficient to plausibly allege the second element – that NYCDOE was aware of the alleged protected activity.

[12] Defendants argue that none of the alleged actions qualifies as an adverse employment action because they did not result in disciplinary action. (Defs.' Mem. at 8.) However, the standard for an adverse action in the retaliation context "is broader than the adverse employment action requirement in the discrimination context, because the action in question need not affect the terms and conditions of employment in order to be considered adverse." *Stanley v. City Univ. of New York*, No. 18-CV-04844 (PAE), 2023 WL 2714181, at *15 (S.D.N.Y. Mar. 30, 2023) (internal alterations omitted); *Cf. Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 452 (S.D.N.Y. 2023) (in discrimination context, "[c]ourts in the Second Circuit have held that the denial of per session and summer work can constitute adverse employment actions") (collecting cases). Thus, the Court finds that the alleged adverse actions plausibly could dissuade a reasonable teacher from making or supporting a charge of discrimination.

Turning to the fourth element, the Court finds that Plaintiff has failed to plausibly allege a causal connection between an alleged adverse employment action and the alleged protected activity. As with First Amendment retaliation, "[a] causal connection in retaliation claims can be shown either '(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'" *Natofsky v. City of New York*, 921 F.3d 337, 353 (2d Cir. 2019) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015)).[13]

Plaintiff has not plausibly alleged causation directly or through circumstantial evidence. To start, Plaintiff cannot show that her protected activity was followed closely by discriminatory treatment because she does not allege when she reported her concerns regarding special education students. The FAC alleges only that these were among the concerns she raised after taking over as Chapter Leader in February 2014. (FAC ¶ 24.) More than five years passed between the beginning of her tenure as Chapter Leader and the alleged adverse actions in November 2019. (*Id*. ¶ 61.) "Without further factual allegations, the Court cannot infer a causal connection based

---

[13] Defendants argue that the Rehabilitation Act requires that the protected activity be the but-for cause of the adverse employment action. (Defs.' Mem. at 10 (citing *Natofsky*, 921 F.3d at 349-53).) "But-for causation does not require a showing that retaliation was an employer's sole motive, only that the adverse action would not have occurred in the absence of the retaliatory motive." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013). Although it is clear that the but-for causation standard applies to claims of employment discrimination under the Rehabilitation Act, *see Natofsky*, 921 F.3d at 349-53, the Court does not read *Natofsky* as establishing a but-for causation standard for retaliation clams. *See id*. at 353 (discussing retaliation claims under Rehabilitation Act without mention of but-for causation standard); *see also Paola v. DeJoy*, 624 F. Supp. 3d 305, 322 (W.D.N.Y. 2022) (noting "the law in this Circuit is unsettled as to the causation standard imposed in Rehabilitation Act retaliation claims").

on temporal proximity. *See, e.g., Natofsky*, 921 F.3d at 353 (approximately one year was "too long a period of time for a jury to be able to infer a causal connection" for retaliation claims under Rehabilitation Act) (citing *Harrison v. U.S. Postal Serv.*, 450 F. App'x 38, 41 (2d Cir. 2011) (concluding that period of "several months" between when plaintiff engaged in protected activity and when he suffered adverse employment action was too long to support the inference of causal connection for Title VII retaliation claim)); *cf. Volpe*, 195 F. Supp. 3d at 597-98 (allegation that plaintiff attempted to speak with parent of special education student about student's rights and interests and "immediately thereafter" was kept in office under supervision by colleagues was sufficient to plausibly allege causal inference).

Nor does Plaintiff allege disparate treatment of fellow employees who engaged in similar conduct, *i.e.*, raising concerns regarding special education violations. (*See generally* FAC.) Further, the FAC is devoid of any allegations of direct animus. For example, Plaintiff does not allege that anyone at NYCDOE "ever referenced [her] advocacy in connection with any of the alleged adverse actions." *See Volpe*, 195 F. Supp. 3d at 597. Plaintiff's general allegation that Principal Villar and AP Galvez failed to cover Plaintiff's class in September 2019 in an effort to retaliate against her for her role as UFT Chapter Leader" (FAC ¶ 35), is insufficient to plausibly allege retaliatory animus based on her advocacy for special education students. *See Stanley*, 2023 WL 2714181, at *15 ("vague, conclusory statements that the defendant retaliated against the plaintiff" insufficient to withstand motion to dismiss).

Accordingly, I recommend that Plaintiff's Rehabilitation Act claim be dismissed.

III.    **Title VII (Third Through Fifth Claims For Relief)**

The FAC adds claims pursuant to Title VII against all Defendants. (*See* FAC ¶¶ 62-79.) The basis of Plaintiff's Title VII claims is that she was retaliated against, including by being subject to a hostile work environment, for complaints she made as UFT Chapter Leader. (*See, e.g.*, FAC ¶¶ 63, 69, 75.) Defendants argue that Plaintiff's Title VII claims should be dismissed because she does not allege that she exhausted her administrative remedies, fails to state a claim for hostile work environment[14] and because there is no individual liability under Title VII. (Defs.' Mem. at 4-5, 17-19.)

"It is well established that Title VII requires a plaintiff to exhaust administrative remedies before filing suit in federal court." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015). To pursue claims under Title VII, a plaintiff must file a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"), or a state or local agency capable of granting relief from discriminatory practices, within 300 days of the alleged discriminatory action. *See Nnebe v. City of New York*, No. 22-CV-03860 (VEC) (SLC), 2023 WL 9100339, at *9 (S.D.N.Y. Nov. 9, 2023), *report and recommendation adopted*, 2023 WL 8643801 (S.D.N.Y. Dec. 14, 2023) (citing 42 U.S.C. §§ 2000e-5(e)(1), 12117(a)). "A plaintiff must then file an action in federal court within

---

[14] To the extent that Plaintiff purports to allege a straight hostile work environment claim, any such claim fails because Plaintiff does not allege that she was subject to a hostile work environment because of a protected characteristic, *i.e.*, "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *see also Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ("It is axiomatic that mistreatment at work, whether through subjection to a hostile environment or through such concrete deprivations as being fired or being denied a promotion, is actionable under Title VII only when it occurs because of an employee's . . . protected characteristic."). Instead, Plaintiff alleges that she was subject to a hostile work environment in retaliation for her activities as UFT Chapter Leader. (*See, e.g.*, FAC ¶¶ 1-3.) Accordingly, the Court considers Plaintiff's Title VII claim as one for retaliatory hostile work environment. *See Pistello*, 2017 WL 1194025, at *10 ("hostile work environment may constitute an adverse employment action in the context of a retaliation claim").

90 days of receipt of a right-to-sue letter from the EEOC." *Id*. (citing 42 U.S.C. §§ 2000e-5(f)(1)) (internal alterations omitted). In the FAC, Plaintiff alleges that she filed an EEOC complaint and "a human rights complaint with the State" and that she received a right to sue letter. (FAC ¶ 4.) However, this conclusory allegation is insufficient to satisfy the exhaustion requirement. *See Henriquez-Ford v. Council of Sch. Supervisors & Administrators*, No. 14-CV-02496 (JPO), 2016 WL 93863, at *1 (S.D.N.Y. Jan. 7, 2016) (allegation that lacked any detail about EEOC proceedings insufficient to satisfy exhaustion requirement). Thus, on her present pleading, Plaintiff has not plausibly alleged that she exhausted her administrative remedies, such that her Title VII claims should be dismissed.

In any event, there are additional, independent grounds for dismissal of Plaintiff's Title VII claims. First, Plaintiff's Title VII claims should be dismissed against the Individual Defendants because there is no individual liability under Title VII. *See Wrighten v. Glowski,* 232 F.3d 119, 120 (2d Cir. 2000). Second, with respect to the NYCDOE, Plaintiff has not alleged that she participated in protected activity under Title VII.

Under Title VII, it is an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "Section 704(a) of Title VII includes an anti-retaliation provision that makes it unlawful 'for an employer to discriminate against any . . . employee[ ] . . .  because [that individual] opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII investigation or proceeding." *Littlejohn*, 795 F.3d at 315 (quoting 42 U.S.C. § 2000e-3(a)). "To

establish a presumption of retaliation at the initial stage of a Title VII litigation, a plaintiff must present evidence that shows (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Id*. at 315-16. "Protected activity has been defined as any activity that opposes the unlawful employment practices of Title VII." *Byerly v. Ithaca Coll.*, 290 F. Supp. 2d 301, 309 (N.D.N.Y. 2003) (citing 42 U.S.C. § 2000e-3(a)), *aff'd*, 113 F. App'x 418 (2d Cir. 2004). "[I]n order to constitute a protected activity for purposes of a retaliation claim, the complaint must be related to discrimination on a basis prohibited by Title VII." *Bennett v. Hofstra Univ.*, 842 F. Supp. 2d 489, 500 (E.D.N.Y. 2012).

Plaintiff's alleged complaints regarding the hiring criteria for the Dominican Republic study abroad program, lack of parking, a possible bedbug infestation and safety in the school science lab (*see* FAC ¶¶ 28, 30, 38-39, 65, 71, 77) do not implicate any unlawful employment practice and, therefore, do not constitute protected activity for purposes of Title VII. *See Chidume v. Greenburgh-N. Castle Union Free Sch. Dist.*, No. 18-CV-01790 (PMH), 2020 WL 2131771, at *4 (S.D.N.Y. May 4, 2020) ("It is well settled that '[a] union grievance can constitute protected activity if it concerns discrimination, but union grievances that complain of matters other than discrimination do not constitute protected activity for purposes of Title VII.") (internal quotation marks omitted) (citing *Melie v. EVCI/TCI Coll. Admin.*, 374 F. App'x 150, 153 (2d Cir. 2010) ("[U]nion grievances that do not complain of discrimination do not constitute a protected activity—the first element of the prima facie case.")). Plaintiff does not allege, for example, that the hiring criteria for the study abroad program discriminated against certain teachers based on a protected characteristic. (*See* FAC ¶ 28.)

To the extent that Plaintiff contends that her advocacy on behalf of students resulted in retaliation, those claims fail for the additional reason that students are non-employees and, therefore, advocacy on their behalf does not qualify as protected activity under Title VII. *See Mitchell v. New York City Dep't of Educ.*, No. 20-CV-01555 (PGG), 2024 WL 1175018, at *11 (S.D.N.Y. Mar. 19, 2024) (complaints filed on behalf of students "do not represent a protest about employment conduct prohibited by Title VII and thus do not qualify as protected activity") (internal quotation marks and alterations omitted); *see also Garrett v. New York City Dep't of Educ.*, 05-CV-01650 (RER), 2008 WL 11414566, at *12 (E.D.N.Y. Aug. 11, 2008), *aff'd*, 362 F. App'x 227 (2d Cir. 2010) ("Because the targets of [Assistant Principal's] allegedly racist comments were students outside of the parties' employment relationship, [the plaintiff's] complaints about [the Assistant Principal's]  behavior does not constitute a 'protected activity' within the meaning of [Title VII].").

For these reasons, I recommend that Plaintiff's Title VII claims be dismissed.

## IV.   NYSHRL And NYCHRL Claims (Sixth Claim For Relief)[15]

Finally, Plaintiff asserts retaliation claims pursuant to the NYSHRL and NYCHRL.[16] (FAC ¶¶ 80-85.) The NYSHRL prohibits retaliation "against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article." N.Y. Exec. Law § 296. Similarly, under the NYCHRL,

---

[15] Plaintiff alleges, and Defendants do not dispute, that she filed the required Notice of Claim in accordance with New York Education Law § 3813(1). (FAC ¶ 5.)

[16] As with her Title VII claims, to the extent Plaintiff purports to assert claims under the NYSHRL or NYCHRL for hostile work environment, rather than for retaliatory hostile work environment, those claims fail because Plaintiff does not allege that she was subject to a hostile work environment because of any characteristic protected by the NYSHRL or NYCHRL. *See* N.Y. Exec. Law § 296(1)(a); N.Y.C. Admin. Code § 8-107(1)(a).

it is "an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate . . . in any manner against any person because such person has[,]" *inter alia*, "opposed any practice forbidden under this chapter." N.Y.C. Admin. Code § 8-107(7).

"To state a claim for retaliation under the NYSHRL and NYCHRL a plaintiff must allege 'that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action.'" *Dobney v. Walt Disney Co.*, No. 23-CV-05380 (JPO), 2024 WL 325336, at *5-6 (S.D.N.Y. Jan. 29, 2024) (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013)); *see also Arazi v. Cohen Bros. Realty Corp.*, No. 20-CV-08837 (GHW), 2022 WL 912940, at *16 (S.D.N.Y. Mar. 28, 2022) (for claims that accrued on or after October 11, 2019, NYCHRL's more liberal pleading standard applies to NYSHRL retaliation claims). "[O]pposing any practice can include situations where a person, before the retaliatory conduct occurred, merely made clear her disapproval of the defendant's discrimination by communicating to him, in substance, that she thought his treatment of the victim was wrong." *Lettieri v. Anti-Defamation League Found.*, No. 22-CV-09889 (PAE), 2023 WL 5152447, at *6 (S.D.N.Y. Aug. 10, 2023) (quoting *Mihalik*, 715 F.3d at 112) (alterations omitted)).

Despite this broader definition for retaliation, the Court finds that Plaintiff has not plausibly alleged that any retaliatory action was taken against her because she protested or opposed statutorily prohibited discrimination. As discussed above in the context of Title VII, Plaintiff's alleged complaints are not protected activity under the NYSHRL or NYCHRL because "they do not represent opposition to an unlawful employment practice by an employer." *Small v. New York City Dep't of Educ.*, 650 F. Supp. 3d 89, 105 (S.D.N.Y. 2023) (dismissing retaliation

28

claims under Title VII, NYSHRL and NYCHRL for failure to allege protected activity made unlawful by any of those statutes); *see also O'Brien v. City of New York, Dep't of Educ.*, No. 22-CV-03117 (KAM) (LB), 2023 WL 5200476, at *11 (E.D.N.Y. Aug. 14, 2023) (complaints to union that did not complain of or oppose discriminatory treatment did not constitute protect activity under Title VII or NYSHRL).

**V.        Res Judicata And Collateral Estoppel**

Finally, Defendants again argue that Plaintiff's claims are barred by *res judicata* and now also argue that they are barred by collateral estoppel. (Defs.' Mem. at 21-23.) The Court previously found that the issue of whether the state court's decision was a "final judgment" for purposes of *res judicata* under New York law was not straightforward and declined to dismiss Plaintiff's claims on that basis. *See Stapleton*, 2023 WL 6163939, at *5. Nonetheless, Defendants again state, in a conclusory fashion, that the state court decision was a decision "on the merits" without attempting to address the issues raised by the Court in rejecting their prior motion. *See id*. Accordingly, I recommend that Defendants' motion be denied to the extent it relies upon *res judicata*. *See Severin v. New York City Dep't of Educ.*, No. 19-CV-00775 (MKV) (RWL), 2021 WL 1226995, at *6 (S.D.N.Y. Mar. 31, 2021) ("The party invoking *res judicata* bears the burden of demonstrating that it applies.") (citing *Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 126 F.3d 365, 369 (2d Cir. 1997)).

Defendants also have not established that collateral estoppel bars any of Plaintiff's claims. "The doctrine of collateral estoppel, or issue preclusion, precludes a party from relitigating a factual or legal issue that the party previously litigated and lost in an earlier action." *Severin*, 2021 WL 1226995, at *4 (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979)). "The party

invoking collateral estoppel must 'clearly establish' the basis for its application." *Id.* (quoting *Beechwood Restorative Care Ctr. v. Leeds*, 436 F.3d 147, 153 (2d Cir. 2006)). Federal courts apply the collateral estoppel rules of the state that rendered the earlier judgment. *See LaFleur v. Whitman*, 300 F.3d 256, 271 (2d Cir. 2002).

"Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006). "An issue that is 'necessarily decided' must have been 'actually decided' and 'necessary to support a valid and final judgment on the merits.'" *Severin*, 2021 WL 1226995, at *5 (quoting *Beechwood*, 436 F.3d at 153). As set forth above, Defendants have not established a final judgment on the merits and, therefore, I recommend that Defendants' motion on this ground be denied. *See Unkechaug Indian Nation v. New York State Dep't of Env't Conservation*, 677 F. Supp. 3d 137, 154 (E.D.N.Y. 2023) ("Having just found [the relevant] state court action was not adjudicated as a final judgment on the merits [for purposes of res judicata], this Court declines to reiterate this point further [in context of collateral estoppel].").

## VI.    <u>Leave To Amend</u>

Plaintiff requests an opportunity to amend for the second time to the extent the Court recommends dismissal of any of her claims. (Pl.'s Opp. Mem. at 18.) The Second Circuit has counseled strongly against the dismissal of claims with prejudice prior to "the benefit of a ruling" that highlights "the precise defects" of those claims. *See Lorely Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190-91 (2d Cir. 2015); *see also Cortec Indus., Inc. v. Sum Holding*

30

*L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead."); Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). However, "[l]eave may be denied for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (internal quotation marks omitted).

Since Plaintiff has not yet had the benefit of a ruling that highlights the precise deficiencies her claims, I recommend that Plaintiff be given leave to amend, except with respect to her Rehabilitation Act and Title VII claims against the Individual Defendants. Amending those claims would be futile since individuals are not subject to personal liability under those statutes. *See Oparaji v. New York City Dep't of Educ.*, 172 F. App'x 352, 355 (2d Cir. 2006) (affirming denial of leave to amend to add individual defendants to claims brought under Title VII as futile).

## CONCLUSION

For the foregoing reasons, I respectfully recommend that Defendants' motion to dismiss the FAC be GRANTED and that Plaintiff be given leave to amend, except with respect to her Rehabilitation Act and Title VII claims against the Individual Defendants.

Dated:    New York, New York
          April 18, 2024

_____
**STEWART D. AARON**
**United States Magistrate Judge**

31

\*          \*          \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Ho.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).