UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                    :
KATY STAPLETON,                                     :
                                                    :
                              Plaintiff,            :        22-CV-9351 (JAV) (SDA)
                                                    :
              -v-                                   :        <u>OPINION AND ORDER</u>
                                                    :
NEW YORK CITY DEPARTMENT OF                         :
EDUCATION, et al.,                                  :
                                                    :
                              Defendants.           :
                                                    :
------------------------------------------------------------------X

JEANNETTE A. VARGAS, United States District Judge:

In her Second Amended Complaint ("SAC"), Plaintiff Katy Stapleton brings federal and state law claims against her employer, the New York City Department of Education ("DOE"), as well as a number of her former supervisors in their individual capacity (collectively, "Defendants"). *See* ECF No. 70 ("SAC"). Plaintiff claims that she suffered unlawful retaliation in violation of the First Amendment for her advocacy as the United Federation of Teachers ("UFT") Chapter Leader at her school, and for her advocacy on behalf of the needs of disabled students. *See generally id*. She further claims that this retaliation violated the Rehabilitation Act, 29 U.S.C. § 701 *et seq.* Plaintiff also brings claims of race, national origin, and age discrimination, retaliation, and hostile work environment, in violation of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, the New

York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq*., and the New York City Human Rights Law ("NYCHRL"), N.Y. City Admin. Code § 8-101 *et seq*.

Before the Court is the July 18, 2025 Report and Recommendation (the "Report" or "R&R") issued by Magistrate Judge Stewart D. Aaron recommending that Defendants' motion to dismiss be granted in its entirety with prejudice. *See* ECF No. 85. For the reasons that follow, the Court overrules the Objections and ADOPTS the well-reasoned Report and Recommendation.

## BACKGROUND

Familiarity with the factual background and relevant procedural history of this case as set out in the R&R is assumed. *See generally* R&R at 2-8. This action is assigned to Magistrate Judge Aaron for general pretrial supervision and for dispositive motions. ECF No. 83. On November 22, 2024, Defendants filed a motion to dismiss the Second Amended Complaint. ECF No. 77. On July 18, 2025, Magistrate Judge Aaron issued the Report addressing the pending motion to dismiss. On August 26, 2025, Plaintiff filed her Objections to the Report. ECF Nos. 88, 89 ("Obj.").[1] After reviewing the Report, the Plaintiff's Objections, and the filings in this case, the Court adopts the Report and Recommendation in its entirety.

---

[1] For the purposes of this Opinion and Order, the Court is relying on the citations located in ECF No. 89 as there is a slight discrepancy between the page numbers.

## STANDARD OF REVIEW

When reviewing a magistrate judge's R&R, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C); *New York City Dist. Council of Carpenters Pension Fund v. Forde*, 341 F. Supp. 3d 334, 336 (S.D.N.Y. 2018) (citations omitted).  After a party submits a timely objection, the district court reviews *de novo* the portions of the R&R to which the party objected.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).  For the portions of the R&R to which no objection is made, the district court need only review for clear error.  *See Fischer v. Forrest*, 286 F. Supp. 3d 590, 600 (S.D.N.Y. 2018), *aff'd*, 968 F.3d 216 (2d Cir. 2020).

## DISCUSSION

Upon conducting a *de novo* review of the portions of the R&R to which Plaintiff has properly objected, the Court overrules such objections.  Any of Plaintiff's objections not specifically addressed in this decision have been considered *de novo* and subsequently rejected.  As to the portions of the R&R to which no proper objections were made, the Court has reviewed those sections and determined that they are not clearly erroneous.  The Court therefore adopts the R&R in its entirety.

## A.   Plaintiff's Title VII Claims are Properly Dismissed with Prejudice for Failure to Exhaust Administrative Remedies

Plaintiff objects to Magistrate Judge Aaron's recommendation that her Title VII claims be dismissed for failure to timely exhaust administrative remedies.  Obj. at 25.  To pursue claims under Title VII, a plaintiff must file a discrimination

charge with the Equal Employment Opportunity Commission ("EEOC"), or a state or local agency capable of granting relief from discriminatory practices, within 300 days of the alleged discriminatory action. 42 U.S.C. §§ 2000e-5(e)(1), 12117(a). An action "must be filed in federal district court within 90 days of the claimant's receipt of a right-to-sue letter from the EEOC." *Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 37 (2d Cir. 2011) (citing 42 U.S.C. § 2000e-5(f)(1)) (alterations omitted). In her complaint, Plaintiff alleges that she received a right-to-sue letter from the EEOC sometime in 2000, SAC, ¶ 6, and from the New York State Division of Human Rights ("SDHR") on December 16, 2020, ECF No. 68-11. As this action was commenced on October 31, 2022, ECF No. 1, well after the 90-day deadline had elapsed, Magistrate Judge Aaron properly concluded that Plaintiff's Title VII claims should be dismissed. R&R at 20.

Plaintiff argues that this conclusion was in error, because the statutory time limit for filing her Title VII action was tolled by her commencement of a state court action. Obj. at 24-25. This objection is flawed in numerous respects.

First, Plaintiff did not raise this argument in her opposition brief to the motion to dismiss. *See* ECF No. 79. It is "established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not." *United States v. Gladden*, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019) (citations and quotation marks omitted).

Even were the Court to consider the tolling argument, however, it is factually
meritless. Plaintiff commenced her state court action on May 5, 2021. ECF No. 53-
2. The 90-day time limit thus had already elapsed at the time she filed suit in state
court. Additionally, the state court action did not purport to bring discrimination or
retaliation claims under Title VII. *Id.* Thus, assuming arguendo that the filing of a
state court action can serve as a basis for equitable tolling of Title VII's filing
deadlines—a proposition for which Plaintiff cites no legal authority—there is no
factual predicate for tolling in the instant case.

## B. Plaintiff's ADEA Claims are Properly Dismissed with Prejudice for Failure to Exhaust Administrative Remedies

"[T]he administrative exhaustion requirement is the same under the ADEA
as it is under Title VII." *Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir. 2003).
Magistrate Judge Aaron therefore aptly concluded that Plaintiff's ADEA claims
must also be dismissed for failure to timely exhaust administrative remedies.[2] The
entirety of Plaintiff's argument on this point is as follows: "The court argues that
Stapleton did not administratively exhaust her claim. This is untrue." Obj. at 32.
This conclusory statement does not properly raise an objection triggering *de novo*
review. *See New York City Dist. Council of Carpenters Pension Fund v. Forde*, 341
F. Supp. 3d 334, 336 (S.D.N.Y. 2018) ("When a party makes only conclusory or
general objections, . . . the Court will review the [R & R] strictly for clear error.")
(quotation omitted). Nor did Plaintiff challenge the exhaustion arguments raised by

---

[2] The Court notes that the SAC does not include a separate ADEA count. Plaintiff does purport to be proceeding with an ADEA claim in the body of the complaint, however. *See* SAC, ¶ 1.

Defendants in her opposition to the motion to dismiss.  ECF No. 79.  In any event, to the extent that Plaintiff intended to rely on the same tolling argument raised with respect to her Title VII claims, the Court rejects it for the reasons stated above.

## C.    Plaintiff Fails to State a Claim Under the Rehabilitation Act

In order to state a claim for retaliation in violation of the Rehabilitation Act, Plaintiff must plead that: "(1) [s]he engaged in an activity protected by the Rehabilitation Act; (2) the employer was aware of this activity; (3) the employer took adverse employment action against [her]; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002).  "A protected activity is an 'action taken to protest or oppose statutorily prohibited discrimination.'" *Ford v. New York City Bd. of Educ.*, No. 19 Civ. 6327 (JPC) (KHP), 2022 WL 1063036, at *8 (S.D.N.Y. Apr. 8, 2022) (citing *Natofsky v. City of New York*, 921 F.3d 337, 354 (2d Cir. 2019)).  This can include advocacy opposing discrimination against special education students, so long so long as the plaintiff "can establish that [s]he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated [the] law." *Ford*, 2022 WL 1063036, at *8.  "A causal connection in retaliation claims can be shown either (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the

plaintiff by the defendant." *Natofsky*, 921 F.3d at 353 (citation and quotations omitted). The Court reviews the sufficiency of Plaintiff's allegations in support of her Retaliation Act claim against this legal backdrop.

As Magistrate Judge Aaron correctly observes, the allegations regarding protected activity in the SAC are, at best, sparse. Plaintiff repeatedly alleges that she was retaliated against "for advocating for special need students," SAC, ¶¶ 43, 46, 71, 74, 75, 77 without elaborating on the nature of this advocacy. The SAC does allege that "beginning in February 2014, Plaintiff was very outspoken in her duties as UFT Chapter leader, reporting among other things to her UFT district representative . . . special education violations of the New York State Education Department's regulations regarding the administration's failure to hold a zero period for ESL and special education students." *Id.*, ¶ 30. Assuming that this is the advocacy for special needs student that is the basis for Plaintiff's retaliation claim, it could plausibly constitute protected activity within the meaning of the Rehabilitation Act.

But Plaintiff does not allege when this advocacy took place. Indeed, it is unclear if this advocacy took place before the supervisor who allegedly retaliated against her even came to the school in 2016. Thus, no inference of causation based upon temporal proximity can be drawn.[3] The SAC is also bereft of allegations that

---

[3] Plaintiff argues that the Magistrate Judge mischaracterizes the record, claiming that paragraph 74 of the SAC sets forth the date upon which Plaintiff engaged in protected activity on behalf of special education students. Obj. at 23. This is incorrect. Paragraph 74 does not contain any information regarding the timeframe

Defendants expressed animus towards the needs of special education students in general, or Plaintiff's advocacy on behalf of such students in particular. The Court therefore agrees that the SAC failed to adequately plead facts from which a plausible inference could be drawn that any adverse actions taken against Plaintiff were causally connected to her advocacy opposing discrimination against special needs students. R&R at 17-18.

Plaintiff objects to this conclusion. Obj. at 22-24. In doing so, however, Plaintiff points only to a paragraph in the SAC that details the adverse actions allegedly taken against her. *Id.* (citing SAC, ¶ 86). This argument addresses a strawman. The issue is not the sufficiency of the pleading of the adverse actions purportedly taken by Defendants; rather, it is the conclusory nature of the allegations regarding the connection between these adverse actions and any protected activity. The Rehabilitation Act retaliation claim must therefore be dismissed for failure to state a claim.

## D. Plaintiff Waived Her Arguments Regarding First Amendment Retaliation

In moving to dismiss the SAC's First Amendment claims, Defendants argued that Plaintiff failed to plead a sufficient causal connection between any protected speech and the alleged adverse actions. ECF No. 78 at 11-12. Plaintiff did not

---

of Plaintiff's complaints regarding the lack of zero period for special need students. SAC, ¶ 74.

address this argument in her opposition brief.  *See generally* ECF No. 79.[4]
Plaintiff's objections to this aspect of the R&R thus constitute new arguments that
do not warrant *de novo* review from this Court.  *Gladden*, 394 F. Supp. 3d at 480.
In any event, Plaintiff's argument on this point relies on the same advocacy for
special needs children as her Rehabilitation Act retaliation claim, *see* Obj. at 16,
and thus suffers from the same deficiencies.

**E.    Plaintiff Fails to State a *Monell* Claim**

Section 1983 provides a "civil cause of action against a party 'who, under
color of any statute, ordinance, regulation, custom, or usage, of any State,'" deprives
another of rights secured by the United States Constitution or federal law.  *Claudio
v. Sawyer*, 675 F. Supp. 2d 403, 407 (S.D.N.Y. 2009), *aff'd*, 409 F. App'x 464 (2d Cir.
2011) (cleaned up).  Section 1983 therefore requires that "(1) the conduct
complained of must have been committed by a person acting under color of state
law; and (2) the conduct complained of must have deprived a person of rights,
privileges, or immunities secured by the Constitution or laws of the United States."
*Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994).

To hold a municipality liable under Section 1983 for a constitutional violation
committed by one of its employees, an additional element must be present:  the
"deprivation of the plaintiff's rights under federal law [must be] caused by a
governmental custom, policy, or usage of the municipality."  *Jones v. Town of E.*

---

[4] Plaintiff objects that it is "patently false" that she waived the issue.  Obj. at 17.  Yet she fails to point to anything in her opposition papers addressing causal connection as it relates to the First Amendment claim.

*Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978)). "[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. Thus, *Monell* liability requires both that an employee's constitutional rights be violated by acts occurring under color of law *and* a plausible allegation that the plaintiff's constitutional rights were deprived as the result of an "official policy or custom of the City." *Albert v. City of New York*, No. 17-CV-3957-ARR-SMG, 17-CV-04315-ARR-SMG, 2018 WL 5084824, at *4 (E.D.N.Y. Oct. 18, 2018) (quoting *Stoeckley v. City of New York*, 700 F. Supp. 2d 489, 494 (S.D.N.Y. 2010)). Accordingly, "courts frequently bifurcate their consideration of a *Monell* claim, only reaching the adequacy of a plaintiff's policy or custom allegations if they find that the plaintiffs have alleged an underlying constitutional violation committed by a state actor." *Albert*, 2018 WL 5084824, at *5 (cleaned up).

In her objections, Plaintiff points to allegations regarding two separate policies: what she terms the "rubber room" policy, which she alleges violated her First Amendment rights, SAC, ¶¶ 113-23, and the "Golden Girls" policy, which she alleges violated her right to be free from age discrimination, SAC, ¶¶ 128-32. Obj. at 1-2, 19-20. With respect to the "rubber room" policy, as the Court has found that Plaintiff did not sufficiently plead a First Amendment violation, it need not reach the question of whether Plaintiff has adequately plead a policy or custom. *Albert*, 2018 WL 5084824, at *5.

With respect to the "Golden Girls" policy, the Court agrees with Magistrate Judge Aaron that the SAC is devoid of allegations that would tend to make the existence of such a policy plausible. R&R at 30. "[T]o survive a motion to dismiss, Plaintiff cannot merely allege the existence of a municipal policy or custom, but must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 535 (S.D.N.Y. 2012) (internal quotations marks omitted). "To allege the existence of an affirmative municipal policy, a plaintiff must make factual allegations that support a plausible inference that the constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policymaking authority for the municipality." *Missel v. Cnty. of Monroe*, 351 F. App'x 543, 545 (2d Cir. 2009) (citation omitted).

The SAC describes the purported "Golden Girls" policy in vague terms, asserting that it is a policy to "age out" older and "darker teachers (black and brown)" while allowing "white teachers retire with benefits and good commendations. Non-white teachers are humiliated out of their jobs." SAC, ¶ 130. Plaintiff alleges that this policy "was intended to reduce the pension budget of New York Depart [sic] of Education by engaging in firings before the terminal pensions are awarded – black and brown employees, especially women were targets of this." *Id.*

11

But the SAC does not identify the manner in which this policy operates, who was responsible for instituting or implementing this policy, how this policy was communicated or enforced, any document in which such a policy is promulgated, or any examples of individuals other than Plaintiff who were affected by this policy. In short, Plaintiff makes the conclusory assertion that a policy exists, without alleging any supporting facts. Allegations that Defendants "acted pursuant to a 'policy,' without any facts suggesting the policy's existence, are plainly insufficient" to survive a motion to dismiss. *Missel*, 351 F. App'x at 545; *see also Ekpe v. City of New York*, No. 20-CV-9143 (AT), 2024 WL 1621207, at *6 (S.D.N.Y. Apr. 12, 2024) (allegations that the City of New York had a de facto policy of sending only non-African American employees to career-advancing trainings, without more to demonstrate the existence of a formal government policy, are insufficient to survive a motion to dismiss).

## F.    Plaintiff Fails to State a Claim of Race or National Origin Discrimination Under the NYSHRL or NYCHRL

The Report accurately found that Plaintiff had not alleged facts from which a plausible inference could be drawn that any adverse actions taken against her were connected to her race or national origin. Rather, as Magistrate Judge Aaron observed, Plaintiff relied on her subjective opinion that her race was a motivating factor. R&R at 23-26. Plaintiff's sole objection to this portion of the Magistrate Judge's recommendation is that it was "improper" to dismiss her claims on this basis because "complaints are subjective." Obj. at 27. This objection is without merit. A plaintiff's "subjective belief" that an adverse action was "motivated by her

race is legally irrelevant." *Farmer v. Shake Shack Enter., LLC*, 473 F. Supp. 3d 309, 328 (S.D.N.Y. 2020); *see also Joseph v. Owens & Minor Distrib., Inc.*, 5 F. Supp. 3d 295, 309 (E.D.N.Y. 2014), *aff'd*, 594 F. App'x 29 (2d Cir. 2015) ("However, a plaintiff's mere subjective belief that he was discriminated against because of his race does not sustain a race discrimination claim." (cleaned up)).  While a plaintiff's burden of alleging facts indicating discriminatory intent is reduced at the pleading stage, it is not non-existent. *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015) (holding that, to avoid dismissal under Rule 12(b)(6), a plaintiff must come forward with "at least minimal support for the proposition that the employer was motivated by discriminatory intent").

## G.    Plaintiff Fails to State a Retaliation Claim Under the NYSHRL or NYCHRL

To make out a retaliation claim under the NYCHRL or NYSHRL, the plaintiff must plead "that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013) (cleaned up).  The R&R properly found that the only protected activities described in the SAC are the 2020 SDHR and EEOC complaints.  R&R at 26-27.  But these occurred after the adverse actions that are at the heart of the SAC, such as the 2019 disciplinary action and suspension.  *See* SAC, ¶¶ 46, 111.  Plaintiff's conclusory statement that "the EEOC and Human rights complaints are plausibly connected to the retaliator[y] conduct by defendants," Obj. at 28, does not constitute a valid objection

to this aspect of the Report. *Bechard v. Colvin*, No. 23-7774, 2024 WL 5274654, at *4 (2d Cir. Jan. 3, 2025) (objection that "did not explain specifically how the magistrate judge erred, did not point to any contrary legal authority, and did not offer any further argumentation on this point" was not sufficient to preserve issue for appellate review).

### H.    Plaintiff Fails to State a Claim for Negligent Infliction of Emotional Distress

Under New York law, a claim for negligent infliction of emotional distress must be brought under either a "bystander theory," which requires the plaintiff's "contemporaneous observation of serious physical injury or death inflicted by the defendant's conduct on a member of the plaintiff's immediate family in his or her presence," or the "direct duty theory," in which a defendant's breach of a duty unreasonably endangers the plaintiff's physical safety. *Baker v. Dorfman*, 239 F.3d 415, 421 (2d Cir. 2000). There is no dispute that neither is implicated in the present case. Instead, Plaintiff seeks to proceed under an exception to this rule, which permits a claim for negligent infliction of emotional distress arising from "special circumstances" that give rise to "an especial likelihood of genuine and serious mental distress." *Id.* Examples of such special circumstances include being misinformed of the death of a close family member or erroneously diagnosed with a serious illness. *Id.* Magistrate Judge Aaron correctly concluded that the SAC does

not allege facts sufficient to establish a claim under the "special circumstances" theory.  R&R at 35.

Plaintiff points to allegations that "plaintiff suffered physically at having to endure reputational damage" as a result of her suspension without pay and assignment to a "rubber room."  Obj. at 33-34.  Yet such allegations of adverse employment actions do not constitute "special circumstances" within the meaning of New York law.  *See, e.g.*, *Alaei v. State Univ. of New York at Albany*, 21-CV-00377 (BKS) (TWD), 2022 WL 4094450, at *11 (N.D.N.Y. Sept. 7, 2022) ("[C]ourts have frequently held that similar circumstances concerning the termination of employment were not sufficient 'special circumstances' to constitute a negligent infliction of emotional distress claim.") (citation and quotations omitted); *Dollman v. Mast Indus., Inc.*, 731 F. Supp. 2d 328, 341 (S.D.N.Y. 2010) ("Learning that you or your spouse was terminated by an employer—a common occurrence in this economy—is not sufficient to support a claim for negligent infliction of emotional distress."); *Kelly v. Chase Manhattan Bank*, 717 F. Supp. 227, 235 (S.D.N.Y. 1989) ("Even under the most optimal circumstances, however, termination of an employee is likely to give rise to bad feelings and anxiety. This cannot mean that every adverse employment decision may give rise to a claim of negligent infliction of emotional distress."); *cf. Alexander v. Westbury Union Free Sch. Dist.*, 829 F. Supp. 2d 89, 112 (E.D.N.Y. 2011) ("A cause of action for negligent infliction of emotional distress may only lie where a defendant owes a 'special duty' to the plaintiff, and an employer does not owe a special duty to an individual employee.").  Accordingly,

Plaintiff's claim of negligent infliction of emotional distress must be dismissed for failure to state a claim.

## CONCLUSION

Having addressed Plaintiff's objections, the Court has otherwise reviewed the record and the Report and Recommendation for clear error. Finding none, the Court hereby ORDERS that the Report and Recommendation is ADOPTED in its entirety. Defendants' motion to dismiss is granted. The Clerk of Court is directed to terminate all pending motions and close the case.

SO ORDERED.

Dated:  September 30, 2025
        New York, New York

_____
JEANNETTE A. VARGAS
United States District Judge